IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-CV-80093

DEBBIE LANZA, individually and on behalf of all others similarly situated,

    *Plaintiff*,

v.

EMJ CORPORATION, a Tennessee corporation, and UPSCALE EVENTS BY MOSAIC, LLC d/b/a THE MOSAIC GROUP, a Florida limited liability company,

    *Defendants*.

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Debbie Lanza brings this class action complaint against Defendants EMJ Corporation and Upscale Events by Mosaic, LLC d/b/a The Mosaic Group (collectively "Defendants"), to stop Defendants' practice of making unsolicited text message calls to cellular telephones of consumers, and to obtain redress for all persons injured by their conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1. Defendant EMJ Corporation, in conjunction with other non-party entities, developed the Palm Beach Outlet Mall in Palm Beach County. As a large-scale project encompassing eighty-four acres, Defendant EMJ Corporation required numerous construction workers to build the mall. In pursuit of this need, EMJ retained the services of Defendant

1

Upscale Events by Mosaic, doing business under the names The Mosaic Group and Mosaic Wired (hereinafter "Mosaic"), to not only advertise and promote the upcoming Palm Beach Outlet Mall, but also recruit a wide range of construction workers to build it.

2.      Defendants held a job fair in August 2012 to attract new workers, and Mosaic, at EMJ's direction, utilized multiple marketing channels to promote the fair. One such method was to send text message advertisements to thousands of consumers without permission.

3.      Defendants made (or directed to be made on their behalf) these unsolicited text messages calls *en masse* to Plaintiff's and putative Class member's cellular telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

4.      Neither Plaintiff Lanza, nor the other members of the proposed Class, ever provided their cellular telephone numbers to Defendants for any purpose, let alone consented to have Defendants make text message calls to their phones.

5.      By making the text message calls at issue in this Complaint, Defendants caused Plaintiff and the members of the Class actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text message calls, and the monies paid to their wireless carriers for the receipt of such text message calls.

6.      In response to Defendants' unlawful conduct, Plaintiff filed the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited text message calling activities and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

7.      Plaintiff Debbie Lanza is a natural person and citizen of the State of Florida.

8.      EMJ Corporaiton is a corporation organized and existing under the laws of the

State of Tennessee with its principal place of business located at 2035 Hamilton Place Boulevard, Chattanooga, Tennessee 37421. EMJ is registered to do business with the Florida Secretary of State. EMJ Corporation does business throughout the United States, the State of Florida and in this District.

9. Upscale Events by Mosaic LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located at 2930 Okeechobee Boulevard, West Palm Beach, Florida 33409. Upscale Events by Mosaic does business under the name "The Mosaic Group." Additionally, Upscale Events by Mosaic operates through the registered fictitious name "Mosaic Wired" (www.mosaicwired.com). Upscale Events by Mosaic LLC does business throughout the United States, the State of Florida and in this District.

**JURISDICTION AND VENUE**

10. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

11. The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants transact significant amounts of business within this District and the conduct and events giving rise to Plaintiff's claims arose in substantial part in this District. Venue is additionally proper because Defendant Upscale Events by Mosaic is headquartered here.

**COMMON FACTUAL ALLEGATIONS**

12. In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative

technologies through which to transmit bulk solicitations cheaply.

13. One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text message calls (usually no more than 160 characters) to and from cellular telephones.

14. SMS message calls are directed to a wireless device using the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

15. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—made directly to user's cell phones." In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone." Amanda Lenhart, *Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens*, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited January 29, 2013).

16. Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because cell phone users must pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

4

17.    On August 20, 2012, Defendants made, or had made on their behalf and at their direction, the following text message call to Plaintiff's cell phone:

> Over 1500 construction jobs are available for the New Palm Beach Mall. Attend the Job Fair tomorrow Aug 21 Gaines Park 9-4 PM Register at http://pboutletmall.com

18.    The text message was made from the phone number (954) 736-6345.

19.    The website pboutletmall.com is registered to "The Mosaic Group." The website prominently featured reference to job openings, including the statement "CONSTRUCTION JOB INFO JOB LISTINGS Hundreds of individuals are needed to construct the new outlet mall. Apply today," and included a "current jobs" page and an online application process.

20.    Contained within the job application was a pull-down menu asking, "How did you hear about the job you are applying for?" Among the choices listed is "Text Message."

21.    Mosaic Wired, a self-described "division of The Mosaic Group" and registered fictitious name of Defendant Upscale Events by Mosaic, describes its primary services on its website as "Mobile Marketing," "Email Marketing," "SMS Solutions," and "Automated Calling."

22.    Defendants made, or had made on their behalf, the same (or substantially the same) text message calls promoting their job opportunities *en masse* to a list or lists of cellular telephone numbers or randomly generated phone numbers.

23.    Defendants made, or had made on their behalf, the text message calls to Plaintiff using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

24.    Defendants obtained Plaintiff's and the Class members' cell phone numbers by

purchasing lists of phone numbers from a third party and/or simply dialing numbers at random.

25. Plaintiff and the Class members did not submit their phone number to Defendants or any entity that indicated that they would receive text messages from Defendants, let alone text message calls promoting construction jobs.

26. Plaintiff never consented to, requested, or otherwise desired or permitted Defendants to make text message calls to her cellular phone, nor did Plaintiff provide Defendants with her cellular telephone number. Plaintiff is not involved in the construction industry and was not looking for a job at the time she received the message.

27. Defendants each were aware that the above described text message calls were being made either by them directly, or made on their behalf, and that the text message calls were being made to consumers who had not consented to receive them.

## CLASS ALLEGATIONS

28. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a class (the "Class") defined as follows:

> All individuals in the United States who received a text message call on their cellular telephone promoting the Palm Beach Outlet Mall, and who never provided their prior express consent to receive such text message calls.

29. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have made text message calls to thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendants' records.

30. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited text message calls.

31. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

32. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   (a) whether Defendants' conduct constitutes a violation of the TCPA;

   (b) whether the equipment Defendants used to make the text message calls in question was an automatic telephone dialing system as contemplated by the TCPA;

   (c) whether Defendants systematically made text message calls to persons who did not previously provide Defendants with their prior express consent to receive such text message calls;

   (d) whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct.

33. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective

relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## COUNT I

### Violation of the TCPA, 47 U.S.C. § 227
### (On behalf of Plaintiff and the Class)

34. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

35. Defendants and their agents made unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Class *en masse* without their prior express consent.

36. Defendants made the text message calls, or had them made on their behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

37. Defendants and their agents utilized equipment that made, or had made on their behalf, the text message calls to Plaintiff and other members of the Class simultaneously and without human intervention.

38. By making, or having made on their behalf, the unsolicited text message calls to Plaintiff and the Class, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii).

39. As a result of Defendants' unlawful conduct, Plaintiff and the members of the

Class suffered actual damages in the form of monies paid to receive the unsolicited text message calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

40. Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Debbie Lanza, individually and on behalf of the Class, prays for the following relief:

1. An order certifying the Class as defined above, appointing Plaintiff Debbie Lanza as the Class Representative, and appointing her counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendants to cease all unsolicited text message calling activities, and otherwise protecting the interests of the Class;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: January 29, 2013           **DEBBIE LANZA**, individually and on behalf of all others similarly situated,

By: /s/ Stefan Coleman
    One of Plaintiff's Attorneys

Stefan Coleman, Esq. (#30188)
LAW OFFICES OF STEFAN COLEMAN, PLLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
Fax:  (888) 498-8946
law@stefancoleman.com

Rafey S. Balabanian (Admission *pro hac vice* to be filed)
Christopher L. Dore (Admission *pro hac vice* to be filed)
Benjamin H. Richman (Admission *pro hac vice* to be filed)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60604
Telephone: (312) 589-6380
rbalabanian@edelson.com
cdore@edelson.com
brichman@edelson.com