## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

DEBBIE LANZA, individually and on behalf of all
others similarly situated,

        Plaintiffs,

v.

EMJ CORPORATION, a Tennessee corporation,
and UPSCALE EVENTS BY MOSAIC, LLC
d/b/a THE MOSAIC GROUP, a Florida limited
liability company,

        Defendants.

Civil Action No.: 13-cv-80093

## DEFENDANT UPSCALE EVENTS BY MOSAIC, LLC's
## OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE
## TO FILE FIRST AMENDED COMPLAINT *INSTANTER*

In this putative class action, plaintiff Debbie Lanza ("Lanza") alleges that the defendants

sent her and other putative class members unsolicited text messages promoting a job fair at the

Palm Beach Mall Outlet ("Mall") in violation of the federal Telephone Consumer Protection Act,

47 U.S.C. § 227 ("TCPA"). Lanza now seeks leave to file an amended complaint for the purpose

of adding three new defendants. Her request should be denied because it is futile.

Two of the three defendants Lanza seeks to add, New England Development, Inc.

("NED, Inc.") and Eastern Real Estate, LLC ("Eastern"), have no relationship whatsoever to the

Mall project. The third entity, Palm Beach Mall Holdings LLC ("PBMH"), is the owner and

developer of the Mall. PBMH retained Mosaic as an independent contractor to provide public

relations services for the Mall. PBMH had no role in sending the text messages to the putative

class members. It relied on Mosaic's expertise to perform services under the contract, including

the promotion of the job fair, in a professional manner consistent with all applicable laws. Other

than an unsupported (and factually untrue) allegation that PBMH "directed" Mosaic to send the text messages, Lanza alleges no facts in the amended complaint supporting a claim that Mosaic's actions are attributable to PBMH.

Accordingly, Lanza cannot sustain the claims in the amended complaint against NED, Inc., Eastern, and PBMH (collectively, the "Proposed Defendants"). The amendment would serve no purpose other than to add unnecessary delay and expense to these proceedings. The motion should, therefore, be denied. As further support for its opposition, Mosaic refers the Court to the Affidavits of Thomas R. Carabine, Bruce M. Herman, and Raymond M. Murphy filed contemporaneously herewith[1] and further states as follows.

## RELEVANT FACTS

1.      Lanza commenced this putative class action by filing a Complaint on January 29, 2013. In the Complaint, Lanza alleges that defendants EMJ Corporation ("EMJ") and Mosaic sent her an unsolicited text message promoting a job fair at the Mall in violation of the TCPA. She seeks actual and statutory damages and an injunction on behalf of herself and a putative class of cellular phone users who allegedly also received unsolicited text messages from the defendants regarding the job fair.

2.      Mosaic filed its Answer to the Complaint on April 22, 2013.

3.      EMJ filed its Answer to the Complaint on May 15, 2013.

4.      On May 13, 2013, Lanza filed a motion for leave to file an amended complaint that adds the Proposed Defendants to this case. She attached a copy of the proposed amended complaint as an exhibit to the motion.

---

[1] Mosaic intends to submit a supplemental affidavit from Mosaic's President and CEO Anne Marie Sorrell. Ms. Sorrell is currently out of the country and due to return on May 28, 2013.

5.       In the motion, Lanza claims that, through informal discovery, she has learned that the Proposed Defendants were directly involved in the transmission of the text messages at issue in this case.

6.       In reality, none of the entities Lanza seeks to add as defendants were directly or indirectly involved in the transmission of the text messages at issue in this case.

7.       NED, Inc. has no management or ownership interest in the Mall; it has no contractual or any other relationship with Mosaic; and it was not involved in any way with the text messages sent by Mosaic to promote the job fair. (Affidavit of Bruce M. Herman, ¶3). Indeed, NED, Inc. is not even an active entity. (Id.). It filed Articles of Dissolution with the Secretary of the Commonwealth of Massachusetts on December 31, 1998. (Id., Ex. 1.).

8.       Likewise, Eastern has no management or ownership interest in the Mall; it has no contractual or any other relationship with Mosaic; and it was not involved in any way with the text messages sent by Mosaic to promote the job fair. (Affidavit of Raymond M. Murphy, ¶3).

9.       PBMH is the owner and developer of the Mall. (Affidavit of Thomas R. Carabine, ¶2, Ex. 1). In that capacity, PBMH retained the services of Mosaic, a marketing and public relations firm, primarily for the purpose of developing and executing outreach efforts and events to small businesses and individuals interested in and qualified to do business with, or perform work on, the Mall. (Id.).

10.       Mosaic was specifically hired for their expertise in marketing, public relations, and communications. (Id., ¶3). Per the contract executed by the parties, Mosaic agreed to perform its services in a professional manner with the level of skill and care normally exercised by competent members of its profession (the "Standard of Care"), it agreed to comply with all applicable laws, and it agreed to indemnify PBMH from and against all claims of any kind

alleged to have arisen out of Mosaic's breach of the contract and/or its negligent or willful acts, omissions, or errors. (Id., ¶2-3, Ex. 1, p.5, 8-9).[2]

11.     In connection with the promotion of a job fair to be held at the Mall in August 2012, Mosaic sent text messages to a list of phone numbers it had obtained. (Id., ¶6).

12.     PBMH had no role in or contemporaneous knowledge of Mosaic's procurement of the list of phone numbers for the promotion of the job fair. (Id.). PBMH did not direct Mosaic to send any text messages to promote the job fair. (Id., ¶5). PBMH did not control, approve, or authorize the content of any text messages, nor did it direct, control, or approve the method of delivery. (Id.). Although PBMH understood that Mosaic might utilize text messaging as one means of performing its public relations services, PBMH relied on Mosaic's judgment and expertise in developing the specific content of any such messages and controlling the manner and means of delivery.  (Id.). PBMH further expected any such text messages would: (a) comply with the Standard of Care and (b) comply with all applicable laws. (Id.).

## ARGUMENT

### I.  Applicable Standard

In deciding whether to grant leave to file an amended complaint pursuant to Fed. R. Civ. P. 15, the court may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment,*

---

[2] The relevant portions of the contract provide as follows:

> Consultant will perform services in a professional manner with the level of skill and care normally exercised by competent members of its profession undertaking similar work, under like conditions and locations and in the same time period (the "Standard of Care"). (p. 5).

> Consultant agrees to comply with all laws applicable to any aspect of the Project. (p. 8).

> Consultant shall, at all times, indemnify and hold harmless the Owner . . . . (p. 9).

etc." Foman v. Davis, 371 U.S. 178, 182 (1962) (emphasis added). The Eleventh Circuit has specifically recognized futility as a proper basis for denying a motion for leave to amend. Alexander v. AOL Time Warner, Inc., 132 F. App'x 267, 269 (11th Cir. 2005).

A trial court's denial of leave to amend is justified by futility when the "'complaint as amended is still subject to dismissal.'" Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999) (quoting Halliburton & Assoc., Inc. v. Henderson, Few & Co., 774 F.2d 441, 444 (11th Cir.1985)). "[J]ustice does not require district courts to waste their time on hopeless cases . . ." Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1255 (11th Cir. 2008).

## II. The TCPA

The TCPA makes it unlawful for "any person . . . to *make* any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). This provision applies to text messages. Buslepp v. B & B Entm't, LLC, 12-60089-CIV, 2012 WL 4761509, at *2 (S.D. Fla. Oct. 5, 2012). Thus, the TCPA imposes liability on the person who "*makes*" a call in violation of the statute. The statute is silent as whether a person who does not make a call can be held vicariously liable for one who does.

The United States Supreme Court has observed that Congress "legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." Meyer v. Holley, 537 U.S. 280, 285 (2003). Without any clear indication of Congressional intent, the Court must presume that Congress intended traditional standards of vicarious liability to apply to TCPA claims. See Thomas v. Taco Bell

-5-

Corp., 879 F. Supp. 2d 1079 (C.D. Cal. 2012). Other district courts have found these traditional theories of vicarious liability applicable to TCPA claims. See, e.g., id.; Accounting Outsourcing, LLC v. Verizon Wireless Pers. Comme'ns, L.P., 329 F. Supp. 2d 789, 806 (M.D. La. 2004).

## III. Vicarious Liability

There is no basis whatsoever for imposing direct liability on any of the Proposed Defendants. Lanza does not allege that the Proposed Defendants sent unlawful text messages to the putative class members. Rather, the amended complaint alleges that the Proposed Defendants directed Mosaic send the text messages on their behalf. Lanza must, therefore, be seeking to hold the Proposed Defendants vicariously liable for the actions of Mosaic.

To succeed on a theory of vicarious liability, Lanza must allege facts showing the existence of an agency relationship between the Proposed Defendants and Mosaic.[3] Under the doctrine of actual authority, a plaintiff demonstrates agency through allegations that: (1) the principal acknowledged that the reputed agent was acting as its agent; (2) the reputed agent accepted that undertaking; (3) the principal exerted control over the agent's day-to-day activities during the course of the agency relationship. Verizon Trademark Servs., LLC v. Producers, Inc., 8:10-CV-665-T-33EAJ, 2011 WL 3629002, at *5 (M.D. Fla. Aug. 18, 2011); see also RESTATEMENT (THIRD) OF AGENCY § 3.01 (2006) ("Actual authority . . . is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf."). Under the doctrine of apparent authority, a plaintiff demonstrates agency through allegations that: (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance on the representation. Nat'l Auto Lenders, Inc. v.

---

[3] A party can also be vicariously liable if it is an alter ego of a party engaged in wrongdoing. See Taco Bell, 879 F. Supp. 2d at 1084, n. 4. In the amended complaint, Lanza does not assert liability on an alter ego or veil piercing theory.

SysLOCATE, Inc., 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) aff'd, 433 F. App'x 842 (11th Cir. 2011); see also RESTATEMENT (THIRD) OF AGENCY § 3.03 ("Apparent authority . . . is created by a person's manifestation that another has authority to act with legal consequence for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation.").

## IV. Analysis

The allegations of the proposed amended complaint fail to establish a principal-agent relationship between Mosaic and the Proposed Defendants. Even construing the relevant allegations as true (which they are not), Lanza alleges only that the Proposed Defendants directed Mosaic to send the text messages at issue in this case. The amended complaint is devoid of any allegations demonstrating the tell-tale signs of a principal-agent relationship, such as the ability of the principal to hire, fire, or control the activities of the purported agent. Moreover, there is no evidence that the Proposed Defendants made any representation to Lanza or any other class member, which would support a claim of apparent authority.

In Ocana v. Ford Motor Co., the district court granted the defendant's motion to dismiss because the plaintiff failed to allege facts sufficient to support the existence of an agency relationship. 992 So. 2d 319, 326 (Fla. Dist. Ct. App. 2008). The plaintiff alleged in the complaint that the defendant car manufacturer exercised control over a dealer based on the manufacturer's right to audit the dealer's records, demand sales reports, and control the dealer's location and size, among other things. Id. The court found these allegations to be insufficient to establish a principal-agent relationship between the manufacturer and dealer. Id.

Although there are no reported Eleventh Circuit decisions on the issue, courts in other jurisdictions have rejected allegations purporting to establish vicarious liability under the TCPA.

See, e.g., Taco Bell, 879 F. Supp. 2d at 1084; Accounting Outsourcing, 329 F. Supp. 2d at 806. For example, in Thomas v. Taco Bell Corp., the district court ruled that Taco Bell Corp. ("Taco Bell") could not be held liable for a text messaging program initiated by an association of local franchisee owners (the "Association") even though Taco Bell's compliance department reviewed and commented on the text messages before they were sent and Taco Bell had the right to appoint one of the four board members of the Association. 879 F. Supp. 2d at 1084. The court found that the defendant failed to demonstrate that Taco Bell controlled "the manner and means of the text message campaign." Id.

As evidenced by the affidavits submitted herewith, Mosaic alone controlled the method and means of the text message promotion for the job fair at the Mall. The Proposed Defendants had no role whatsoever in sending the text messages to the putative class members. This is particularly true with respect to NED, Inc. (a dissolved entity) and Eastern, neither of whom has any management or ownership interest in the Mall or any relationship or contact with Mosaic.[4]

In addition, the contract between PBMH and Mosaic shows that Mosaic was to act as an independent contractor providing public relations services for the Mall. The mere provision of these services, without more, does not create an agency relationship. The mere allegation that the Proposed Defendants directed Mosaic to send the text messages, absent any allegations that Mosaic acted under the actual or apparent authority of the Proposed Defendants, fails to state a claim.

This is clearly not a case where the Court must address concerns that a defendant is attempting to avoid liability by remaining willfully ignorant of its agents' conduct. PBMH carefully selected Mosaic for its expertise. It required Mosaic to perform its services consistent

---

[4] Mosaic notes for the purposes of the futility analysis that this Court cannot exert personal jurisdiction over NED, Inc. or Eastern. Neither entity has sufficient contacts in Florida. Thus, amending the complaint to add them as defendants would be futile.

with the Standard of Care and in compliance with all applicable laws. PBMH empowered

Mosaic to act independently, including through the promotion of the job fair, because PBMH

reasonably believed that Mosaic was in the best position to determine the method and means of

the delivery of its public relations services. Thus, there is no equitable demand that the Court

find an agency relationship between PBMH and Mosaic.

## CONCLUSION

For the foregoing reasons, the Court should deny Lanza's motion for leave to file an

amended complaint.

Respectfully submitted,

UPSCALE EVENTS BY MOSAIC, LLC
d/b/a THE MOSAIC GROUP,

By its attorney,

/s/ Donald J. Thomas
Donald J. Thomas, Esq.
Florida Bar No. 834599
don@beltlawyers.com
LEWIS & THOMAS LLP
445 East Palmetto Park Road
Boca Raton, FL 33432
Telephone: (561) 368-7474
Facsimile: (561) 368-0293

Dated: May 28, 2013

Dated: *May 28*, 2013
Boca Raton, Florida

Respectfully submitted,

/s/ Donald J. Thomas
DONALD J. THOMAS, ESQ.
Florida Bar No. 834599
don@beltlawyers.com
BEARDEN, LEWIS & THOMAS LLP
445 East Palmetto Park Road
Boca Raton, Florida 33432
Telephone:  561/368-7474
Facsimile:   561/368-0293
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on *May 28 2013* I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF. I also certify that the remaining Defendants are being served this day in the manner indicated on the attached Service List.

/s/ Donald J. Thomas
DONALD J. THOMAS, ESQ.

### Certificate of Service

I hereby certify that on *May 28, 2013* I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF. I further certify that the remaining Defendants are being served this day in the manner indicated on the attached Service List.

/s Donald J. Thomas
DONALD J. THOMAS, ESQ.