IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-CV-80093

DEBBIE LANZA, individually and on behalf of all others similarly situated,

       *Plaintiff*,

v.

EMJ CORPORATION, a Tennessee corporation, and UPSCALE EVENTS BY MOSAIC, LLC d/b/a THE MOSAIC GROUP, a Florida limited liability company, PALM BEACH MALL HOLDINGS, LLC, a Delaware limited liability company, NEW ENGLAND DEVELOPMENT, INC., a Massachusetts corporation, and EASTERN REAL ESTATE, LLC, a Delaware limited liability company.

       *Defendants*.

## FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Debbie Lanza brings this First Amended Class Action Complaint against Defendants EMJ Corporation, Upscale Events by Mosaic, LLC d/b/a The Mosaic Group, Palm Beach Mall Holdings, LLC, New England Development, Inc., and Eastern Real Estate, LLC (collectively "Defendants"), to stop their practice of making unsolicited text message calls to cellular telephones of consumers, and to obtain redress for all persons injured by their conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.     Defendants Palm Beach Mall Holdings, LLC, New England Development, Inc.,

1

Eastern Real Estate, LLC, and EMJ Corporation (the "Developer Defendants"), are in the process of developing and constructing the Palm Beach Outlet Mall in Palm Beach County. To assist with its various marketing campaigns, the Developer Defendants engaged Defendant Upscale Events by Mosaic, doing business under the names The Mosaic Group and Mosaic Wired (hereinafter "Mosaic"), to advertise and promote the Palm Beach Outlet Mall, coordinate job fairs, and recruit workers. The Developer Defendants directed Mosaic to send such advertisements and promotions through several channels, including through the use of text message calls and robocalls.

2.    For example, in the days leading up to their August 2012 job fair, the Developer Defendants' directed the mass transmission of promotional text message advertisements to the cellular phones of thousands of consumers without permission or consent.

3.    The Developer Defendants made (i.e., directed Mosaic to make on their behalf) these unsolicited text messages calls *en masse* to Plaintiff's and putative Class member's cellular telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

4.    Neither Plaintiff Lanza, nor the other members of the proposed Class, ever provided their cellular telephone numbers to any of the Defendants for any purpose, let alone consented to have Defendants make text message calls to their phones.

5.    By making the text message calls at issue, the Developer Defendants and Mosaic caused Plaintiff and the members of the Class actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text message calls, and the monies paid to their wireless carriers for the receipt of such text message calls.

6.    In response to Defendants' unlawful conduct, Plaintiff filed the instant lawsuit

and seeks an injunction requiring Defendants to cease all unsolicited text message calling activities and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

7. Plaintiff Debbie Lanza is a natural person and citizen of the State of Florida.

8. Defendants Palm Beach Mall Holdings, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 1 Wells Avenue, Newton, Massachusetts, 02459. Palm Beach Mall Holdings, LLC is registered to do business with the Florida Secretary of State. Palm Beach Mall Holdings, LLC does business throughout the United States, the State of Florida, and in this District.

9. New England Development, Inc. is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business located at 1 Wells Avenue, Newton, Massachusetts, 02459. New England Development, Inc. does business throughout the United States, the State of Florida, and in this District.

10. Eastern Real Estate, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 120 Presidential Way, Suite 300, Woburn, Massachusetts, 01801. Eastern Real Estate, LLC does business throughout the United States, the State of Florida, and in this District.

11. EMJ Corporation is a corporation organized and existing under the laws of the State of Tennessee with its principal place of business located at 2035 Hamilton Place Boulevard, Chattanooga, Tennessee 37421. EMJ is registered to do business with the Florida Secretary of State. EMJ Corporation does business throughout the United States, the State of Florida and in this District.

12. Upscale Events by Mosaic LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located at 2930 Okeechobee Boulevard, West Palm Beach, Florida 33409. Upscale Events by Mosaic does business under the name "The Mosaic Group." Additionally, Upscale Events by Mosaic operates through the registered fictitious name "Mosaic Wired" (www.mosaicwired.com). Upscale Events by Mosaic LLC does business throughout the United States, the State of Florida and in this District. At all relevant times, Mosaic acted as a marketing and advertising consultant to Defendants, and carried out their directives.

**JURISDICTION AND VENUE**

13. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

14. The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants transact significant amounts of business within this District and the conduct and events giving rise to Plaintiff's claims arose in substantial part in this District. Venue is additionally proper because Defendant Upscale Events by Mosaic is headquartered here.

**COMMON FACTUAL ALLEGATIONS**

15. In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to transmit bulk solicitations cheaply.

16. One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the

4

transmission and receipt of short text message calls (usually no more than 160 characters) to and from cellular telephones.

17.     SMS message calls are directed to a wireless device using the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

18.     According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—made directly to user's cell phones." In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone." Amanda Lenhart, *Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens*, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited January 29, 2013).

19.     Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because cell phone users must pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

20.     On August 20, 2012, Defendants made, or had made on their behalf and at their direction, the following text message call to Plaintiff's cell phone:

> Over 1500 construction jobs are available for the New Palm Beach Mall. Attend the Job Fair tomorrow Aug 21 Gaines Park 9-4 PM Register at http://pboutletmall.com

21.     The text message was made from the phone number (954) 736-6345.

5

22. The website pboutletmall.com is registered to "The Mosaic Group." The website prominently featured and promoted the Developer Defendants' Palm Beach Outlet Mall. The website homepage states:

> Developers New England Development and Eastern recently acquired an 80-acre property located on Palm Beach Lakes Boulevard at Interstate 95 in West Palm Beach, Florida and will build The Palm Beach Outlets which will include an open-air outlet center and an adjacent shopping center featuring a dynamic mix of national and retail tenants.

23. The website homepage also prominently featured a recruitment page including the statement "CONSTRUCTION JOB INFO JOB LISTINGS Hundreds of individuals are needed to construct the new outlet mall. Apply today," and included a "current jobs" page and an online application process.

24. Contained within the job application was a pull-down menu asking, "How did you hear about the job you are applying for?" Among the choices listed is "Text Message."

25. Mosaic Wired, a self-described "division of The Mosaic Group" and registered fictitious name of Defendant Upscale Events by Mosaic, describes its primary services on its website as "Mobile Marketing," "Email Marketing," "SMS Solutions," and "Automated Calling."

26. The Developer Defendants made (i.e., directed Mosaic to make on their behalf), the same (or substantially the same) text message calls promoting the Palm Beach Outlet Mall and their job opportunities *en masse* to a list or lists of cellular telephone numbers or randomly generated phone numbers.

27. The Developer Defendants made (i.e., directed Mosaic to make on their behalf), the text message calls to Plaintiff using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such

numbers.

28. Defendants obtained Plaintiff's and the Class members' cell phone numbers by extracting such information from public records, purchasing lists of phone numbers from one or more third parties, and/or simply dialing numbers at random.

29. Each and every one of the Defendants benefited through the transmission of the spam text messages at issue: Mosaic got paid for sending them, and the Developer Defendants successfully—though unlawfully—promoted their Palm Beach Outlet Mall and job fair.

30. Plaintiff and the Class members did not submit their cell phone number to Defendants or any entity that indicated that they would receive text messages from Defendants, let alone text message calls promoting the Palm Beach Outlet Mall or construction jobs.

31. Plaintiff never consented to, requested, or otherwise desired or permitted Defendants to make text message calls to her cellular phone, nor did Plaintiff provide Defendants with her cellular telephone number. Plaintiff is not involved in the construction industry and was not looking for a job at the time she received the text message.

32. The Developer Defendants specifically engaged and directed Mosaic to make the text message advertisement calls described above. In that way, the Developer Defendants controlled the content of the advertisement (i.e., they directed Mosaic to send advertisements promoting their Palm Beach Outlet Mall and their job fairs), and the method of delivery (i.e., the directed Mosaic to transmit such advertisements via text message).

## CLASS ALLEGATIONS

33. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a class (the "Class") defined as follows:

> All individuals in the United States who received a text message call on their cellular telephone promoting the Palm Beach Outlet Mall, and who

never provided their prior express consent to receive such text message calls.

34. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have made text message calls to thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendants' records.

35. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited text message calls.

36. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

37. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    whether Defendants' conduct constitutes a violation of the TCPA;

    (b)    whether the equipment Defendants used to make the text message calls in question was an automatic telephone dialing system as contemplated by the TCPA;

    (c)    whether Defendants systematically made text message calls to persons who did not previously provide Defendants with their prior express consent to receive such text message calls;

  (d) whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct.

38. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Class)**

39. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

40. Defendants and their agents made unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Class *en masse* without their prior express consent.

41. Defendants made the text message calls, or had them made on their behalf, using

equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

42. Defendants and their agents utilized equipment that made, or had made on their behalf, the text message calls to Plaintiff and other members of the Class simultaneously and without human intervention.

43. By making, or having made on their behalf, the unsolicited text message calls to Plaintiff and the Class, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii).

44. As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited text message calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

45. Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Debbie Lanza, individually and on behalf of the Class, prays for the following relief:

1. An order certifying the Class as defined above, appointing Plaintiff Debbie Lanza as the Class Representative, and appointing her counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendants to cease all unsolicited text message calling activities, and otherwise protecting the interests of the Class;

4. An award of reasonable attorneys' fees and costs; and

     5.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

                               Respectfully submitted,

Dated:  June 10, 2013               **DEBBIE LANZA**, individually and
                                     on behalf of all others similarly situated,


                               By:  /s/ Stefan Coleman
                                   One of Plaintiff's Attorneys

Stefan Coleman, Esq. (#30188)
LAW OFFICES OF STEFAN COLEMAN, PLLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
Fax:  (888) 498-8946
law@stefancoleman.com

Rafey S. Balabanian
Ari J. Scharg*
Benjamin H. Richman
Benjamin S. Thomassen
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60604
Telephone: (312) 589-6380
rbalabanian@edelson.com
ascharg@edelson.com
brichman@edelson.com
bthomassen@edelson.com

*Admitted Pro Hac Vice*

11

## CERTIFICATE OF SERVICE

      I, Stefan Coleman, an attorney, certify that on June 10, 2013, I served the above and foregoing *First Amended Class Action Complaint*, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 10th day of June, 2013

                                            /s/ Stefan Coleman