IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:13-cv-80093-DMM

DEBBIE LANZA, individually and on behalf of all others similarly situated,

        *Plaintiff*,

v.

UPSCALE EVENTS BY MOSAIC, LLC d/b/a THE MOSAIC GROUP, a Florida limited liability company, PALM BEACH MALL HOLDINGS, LLC, a Delaware limited liability company.

        *Defendants*.

**PLAINTIFF'S REPLY IN SUPPORT OF HER AMENDED MOTION
FOR CLASS CERTIFICATION**

      Defendant Upscale Events by Mosaic, LLC d/b/a/ the Mosaic Group ("Mosaic"), under instruction from and on behalf of Defendant Palm Beach Mall Holdings, LLC ("PBMH"), sent unsolicited text-message spam to over 90,000 Palm Beach-area residents, using an automated telephone dialing system, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Plaintiff Debbie Lanza has moved to certify a class of individuals who, in August 2012, received text messages advertising a job fair at PBMH's new outlet mall. (*See* Dkt. 83 ("Cert. Mot.") at 2 (defining class).) Specifically excluded from the class are all individuals who ever provided their cellular phone numbers to Mosaic, meaning that *no individual* in the putative class consented to the receipt of Defendants' text spam.

      Faced with a class of identically-situated individuals who were uniformly harmed by Defendants' conduct, PBMH resorts to mischaracterizations of the facts and the law in an attempt to avoid certification. In its memorandum in opposition to class certification, (Dkt. 97

1

("PBMH Opp.")), PBMH raises four arguments. First, PBMH contends that "thousands" of class members consented to the receipt of the text messages by providing their phone numbers to Mosaic, thus creating individualized issues that preclude certification. Second, PBMH argues that because each putative class member will actually have to present evidence of class membership, no class can be certified. Third, PBMH argues that certification is improper because over 90,000 claims of at least $500 each are supposedly improper when aggregated. Finally, PBMH contends that Plaintiff cannot certify a class without a list of all the individuals who would comprise it.

Each argument fails. First, PBMH's consent challenges ignore the class definition and the fact that all individuals who provided their phone numbers to Mosaic are specifically excluded from the class, meaning that no class member could have possibly consented to the messages at issue in this case. Second, PBMH's evidentiary challenge fails because *every* class action requires putative members to present some evidence of membership, and this case lacks any unique circumstances sufficient to warrant denial of certification. Third, PBMH's "aggregated damages" argument fails because it is inconsistent with statutory text, Supreme Court precedent, and basic math—PBMH's potential liability is the same whether the class members hold individual, or aggregated, claims. Fourth and finally, PBMH's "class list" requirement is simply inconsistent with Rule 23 and decades of class certification decisions. Accordingly, PBMH's response fails, and Plaintiff's certification motion should be granted.

## ARGUMENT

I.  **PBMH's arguments against commonality, typicality, and predominance misunderstand the class definition, the facts, and the law.**

PBMH does not directly challenge Plaintiff's ability to satisfy any of Rule 23's requirements. Instead, PBMH raises two "issues" that it contends preclude class certification

here. First, PBMH asserts that individualized consent issues make certification inappropriate, ignoring that the class excludes anyone who gave their phone number to Mosaic (a prerequisite to consent). Second, PBMH contends that because each class member must individually establish membership, no class can be certified. This challenge, however, is untenable because in *every* class action, every putative class member must provide *some* evidence of membership. Thus, PBMH's generalized attacks on certification fail.

### A. PBMH's consent defense is a red herring; individuals who consented to receiving text messages from Mosaic are not members of the class.

PBMH believes that individualized consent issues preclude certification. Specifically, it contends that "thousands of individuals authorized Mosaic to send them text messages," that "[a]ny text messages sent to these individuals did not violate the TCPA," and therefore the only way to determine which class members "previously consented to receive such communications is on a case-by-case basis." (PBMH Opp. at 11 – 12.) PBMH's argument, however, relies on an inherently flawed premise: the Class does not include any individuals who gave their cell phone number to Mosaic. *By definition*, any individual who provided their cell phone number to Mosaic is not a class member. (Cert. Mot. at 2.) No class members consented to receive text messages from Mosaic, because anyone who did is excluded from the class. While PBMH contends that Mosaic collected *individuals'* phone numbers from a variety of sources (PBMH Opp. at 12), Mosaic only collected *Class members'* phone numbers from a single source (the State of Florida voting records), (Cert. Mot. at 10 – 11). And PBMH itself admits that "Mosaic never sought consent for the phone numbers it obtained from the [voting records] disk." (PBMH Opp. at 12.)

Thus, there is no need for an individualized inquiry as to any class member's consent. *None* of the class members provided their cell phone numbers to Mosaic, and thus *none* of the class members consented to receive the text messages. (Cert. Mot. at 10 – 11.) The individuals

3

that PBMH contends create individualized issues simply are not class members, and therefore cannot prevent certification. *See Fabricant v. Sears Roebuck*, 202 F.R.D. 306, 308 – 09 (S.D. Fla. 2001) ("Nothing prevents specifically excluding class members for preserving the cohesiveness of the class."). Instead, once those individuals are excluded, all that remains is a single, cohesive, certifiable class. *See Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 695 (S.D. Fla. 2013) (upholding certification of TCPA class definition that "carved out . . . anyone who had any communications with [Defendant] prior to the first call."); *see also Roper v. Consurve, Inc.*, 578 F.2d 1106, 1116 (5th Cir. 1978) (approving exclusion of individuals from class, where inclusion would prevent certification and "have the real effect of permitting a defendant to violate a federal statute either with impunity or minor expense."). Ultimately, PBMH's consent argument isn't relevant to the class certification question at all; it's simply an argument that non-class members lack certifiable claims. As such, PBMH's consent argument cannot stand as a barrier to certification.

  **B.**  **The need to verify individuals' class membership does not preclude certification.**

Citing no authority, PBMH contends that the class cannot be certified because putative members will have to establish their membership. (PBMH Opp. at 15.) PBMH's argument is a nonstarter, however, because the mere need to provide objective evidence of class membership does not preclude certification. *See Neumont v. Monroe Cnty., Fla.*, 198 F.R.D. 554, 558 – 59 (S.D. Fla. 2000) (certifying class even where membership would be established by tax returns, rental contracts, and similar documents); *Nissan Antitrust Litig.*, MDL No. 120, 1976 WL 1297, at *2 (S.D. Fla. May 28, 1976) (finding need to objectively determine class membership insufficient to preclude certification). Indeed, *every* class action, even those with class membership lists, requires that putative class members provide some evidence (usually in the

4

form of a sworn affidavit or claim form) that they are in fact the individuals that fall within the definition of the class. *See Edwards v. The First Am. Corp.*, 385 Fed. Appx. 629, 631 (9th Cir. 2010) (reversing denial of certification and noting that "every class action requires identification of class members, and most require individualized proof of loss.").

Further, PBMH's assertion that class members must demonstrate that they received the text message at issue does not preclude certification, as this would be no different from the numerous cases requiring individuals to provide proof of purchase to establish class membership. *See*, *e.g.*, *State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 324 (5th Cir. 1978) (noting that price-fixing class actions can be certified despite requiring proof of purchase); *Fradette v. Am. Serv. Corp.*, No. 76-6373-Civ-CA, 1979 WL 1609, at *1 (S.D. Fla. Apr. 5, 1979) (certifying class even though "it may be necessary to prove more than purchase").

Accordingly, PBMH's challenge—that certification is improper because putative class members will have to provide evidence of membership—is untenable.

## II. A class action is a superior method for adjudicating the 90,000-plus claims at issue, despite PBMH's attempt to fabricate a "common good" exception to certification.

PBMH contends that certification is improper because (1) its text spam campaign was supposedly done for the common good, and (2) the class-wide damages grossly outweigh the class-wide harm. (PBMH Opp. at 16 – 18.) Each challenge fails because it asks the Court to substitute its own policy judgments for those of Congress.

PBMH's first argument is that "[t]his case is particularly 'undesirable' for class certification" because it involves text messages that supposedly "were in the nature of a public service announcement" rather than for "selling commercial goods or services." (PBMH Opp. at 16.) But this challenge isn't to certification at all; it's to the merit of Plaintiffs' and the Class's TCPA claims. PBMH essentially contends that the Court should add a "common good"

5

exception to certification in the context of the TCPA, something Congress chose not to do. *See United States v. Johnson*, 529 U.S. 53, 58, 120 S. Ct. 1114, 1118 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others.").

PBMH also contends that certification is "undesirable" because it would create liability grossly disproportionate to the harm caused. (PBMH Opp. at 16 – 17.) Defendants' "disproportionate aggregate damages" argument, however, again asks the Court to substitute PBMH's policy preferences over Congress's express language and intent, and contradicts Supreme Court precedent establishing a presumption that class relief is available. As explained by the Supreme Court, "[i]n the absence of a direct expression of Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the [Federal Rules of Civil Procedure], class relief is appropriate in civil actions brought in federal court." *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979).

As a result, because the TCPA *does not* contain a class action prohibition, but *does* contain a statutory damages provision, Congress is presumed to have enacted the TCPA with the intent to allow for a class-wide statutory damage award. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 706, 717 (9th Cir. 2010). Further, PBMH's argument ignores the basic fact that *class certification has no effect on outstanding liability*. Defendants violated the rights of over 90,000 putative class members. They are potentially liable for at least $500 to each of those individuals in exactly the same way, regardless of certification. Certification will only serve to reduce litigation costs; it will have no effect on the basic math relating to Defendants' potential liability. *Cf. Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("The reason that damages can be substantial . . . does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person . . . combined with [Defendant's]

6

decision to obtain the credit scores of more than a million persons.").[1]

Finally, PBMH argues that certification is improper because the TCPA's statutory damages provision incentivizes individual and small claims suits, supposedly eliminating the need for class litigation. (PBMH Opp. at 17 – 18.) This position, too, has been soundly rejected, in part because the time and expense of litigating individual claims renders them economically impracticable, even with the potential availability of statutory damages. As explained by the Seventh Circuit in a case involving the Fair Credit Reporting Act, because "actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury. Rule 23(b)(3) was designed for situations like this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray*, 434 F.3d at 953. As Judge Easterbrook noted, "[t]he practical alternative to class litigation is punitive damages, not a fusillade of small-stakes claims." *Id.*

Thus, the Court cannot accept PBMH's invitation to deny certification based on its view that aggregation of liability is undesirable as a policy matter. *See Murray*, 434 F.3d at 953 – 54 ("[T]he district judge sought to curtail the aggregate damages for violations he deemed trivial. Yet it is not appropriate to use procedural devices to undermine laws of which a judge disapproves.").

### III. Because the class is defined by reference to objective criteria, it is ascertainable.

Finally, PBMH contends that certification should be denied because "[u]nder the Plaintiff's proposed class definition, the Court cannot determine whether an individual is part of

---

[1] PBMH also relies on *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004) *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), for the proposition that statutory damage class actions cannot be certified. (Def. Br. at 16 – 17). PBMH ignores, however, that while *Klay* spoke specifically of "unintentional acts under a strict liability standard," *id.*, Plaintiffs here allege that Defendants' TCPA violations were knowing and willful. (*See* Dkt. 99 at 18 – 19.)

7

the putative class without extensive individual inquiries into the merits of their claims." (PBMH Br. at 18.) Specifically, PBMH contends that individual inquiries into consent will be necessary and will render the class unmanageable. (*Id.* at 18 – 19.) PBMH couldn't be more wrong.

As PBMH notes, "[a] proposed class is permissible under Rule 23 so long as it is not too amorphous or incapable of a reasonably precise definition." *Neumont v. Monroe Cnty., Fla.*, 198 F.R.D. 554, 557 (S.D. Fla.). A class has a reasonably precise definition where, as here, it "is defined by objective criteria." *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 651 (S.D. Fla. 2012); *Fabricant*, 202 F.R.D. at 308 – 09 ("The class definition is viable if it is ascertainable by an objective standard."). The goal of the ascertainability inquiry is not to identify individual class members "at the time of certification," but rather that it "be possible for the members to identify themselves as a member of the class." *Johnson v. GMRI, Inc.*, No. CV-F-07-0283 LJO DLB, 2007 WL 963209, at *7 (E.D. Cal. Mar. 29, 2007) (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)).

Here, any individual's class membership is determined by reference to two purely objective and easily determinable criteria: (1) whether the individual received the text message described in the class definition, and (2) whether the individual ever provided his or her phone number to Mosaic. Because any individual's membership can be determined by answering two objective questions, "the proposed class is capable of precise definition both as to who is included and who is excluded." *Neumont*, 198 F.R.D. at 558. Anyone's class membership can be established by verifying receipt of the message, and checking that person against the list of names and phone numbers provided to Mosaic. (*See* Cert. Mtn. at 4 n.7.)

PBMH contends that each time a person claims membership, a mini-trial will be necessary on the issue of consent. (PBMH Opp. at 18.) Not true. Mosaic has records of the

8

individuals who have provided it their phone numbers. (*See* Cert. Mtn. at 4 n.7.) For everyone else who received the message, Mosaic collected their numbers without consent. (*See* PBMH Opp. at 12 (admitting that Mosaic never sought consent).) Therefore, neither PBMH nor Mosaic has any basis for a consent challenge to anyone who (1) received the call, and (2) had not given their phone number to Mosaic. (*See* Cert. Mtn. at 2.).

Thus, far from requiring a mini-trial, in evaluating a claimant's class membership, the Court or Defendants will only have to determine whether the individual provided proof of receipt before checking that person's name against the list of people who provided their phone numbers to Mosaic. If the person *did* submit sufficient proof of receipt and *isn't* on that list, the person has a claim. Thus, PBMH's ascertainability/manageability challenge only succeeds if the Court accepts the proposition that even the mere act of checking a name against a class list is a sufficiently individualized inquiry as to warrant denial of certification. That plainly is not the case. *See, e.g., Manno*, 289 F.R.D. at 695 (certifying class of persons whose identities could be determined from defendant's phone records).

Finally, PBMH challenges certification on the ground that Plaintiff does not currently have a list of all class members. (Def. Br. at 19.) PBMH's contention that the lack of a list "create[s] serious obstacles to providing adequate notice to the class and highlight[s] the indefiniteness of the proposed class definition," (*id.*), is mistaken. "Case law is clear that there is no requirement that every class member, other than the named plaintiffs be identified at the outset of the litigation . . . Instead, a class definition is necessary only to establish that the class does, in fact exist and that its members *will be identifiable*." *Neumont*, 198 F.R.D. at 558 (citing *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)) (emphasis added). Thus, that Plaintiff does not currently have a list of all class members' names is irrelevant; the

class is objective, precise, and easily manageable.

Likewise, PBMH's notice concerns are misplaced. PBMH contends that without a list of class members, effective notice cannot be given. (PBMH Opp. at 19.) This argument fails in the first instance because, as noted above, a class list is not a requirement for certification. Second, Plaintiff can give effective notice through the same State of Florida voting records Mosaic used to send the messages in the first place,[2] in addition to other reasonable methods of notice. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) (approving notice plan providing for direct, as well as publication, Internet, and website notice).

Ultimately, PBMH's ascertainability challenge is nothing more than an argument that Plaintiff cannot certify the class without first possessing a list that identifies each and every class member. That requirement is plainly inconsistent with the case law, and should be rejected.

## CONCLUSION

For the foregoing reasons, and those discussed in Plaintiff's motion, this case is appropriate for class certification. Accordingly, Plaintiff Debbie Lanza, on her own behalf and on behalf of the proposed Class, respectfully requests that this Court (i) grant Plaintiff's Amended Motion for Class Certification, (ii) appoint Plaintiff as Class representative, (iii) appoint Plaintiff's counsel, Edelson LLC and the Law Offices of Stefan Coleman, LLC, to serve as Class counsel, and (iv) grant such further relief as this Court deems just and proper.

---

[2] PBMH contends that notice and ascertainability are impossible because Mosaic supposedly has no record of the criteria used to search the voting records database. However, even if the *exact* list is not recreated, Plaintiff could recreate a larger list necessarily including all class members (including, for instance, all cellular numbers belonging to Palm Beach County voters), thereby ensuring that all class members do receive notice. *See* Fed. R. Civ. P. 23(c)(2)(B) (requiring "the best notice that is practicable under the circumstances.").

        Respectfully submitted,

        **DEBBIE LANZA**, individually and on behalf of all others similarly situated,

Dated: September 26, 2013        By:   s/ Stefan Coleman
                One of Plaintiff's Attorneys

        Stefan Coleman, Esq. (#30188)
        Law Offices of Stefan Coleman, LLC
        201 South Biscayne Boulevard, 28th Floor
        Miami, Florida 33131
        Tel: 877.333.9427
        Fax: 888.498.8946
        law@stefancoleman.com

        By:   s/ Ari J. Scharg
                One of Plaintiff's Attorneys

        Rafey S. Balabanian
        Ari J. Scharg*
        Benjamin S. Thomassen
        EDELSON LLC
        350 North LaSalle Street, Suite 1300
        Chicago, Illinois 60654
        Telephone: (312) 589-6380
        rbalabanian@edelson.com
        ascharg@edelson.com
        bthomassen@edelson.com

        * Admitted *pro hac vice*.

## CERTIFICATE OF SERVICE

      I, Stefan Coleman, an attorney, certify that on September 26, 2013, I served the above and foregoing ***Reply in Support of Plaintiff's Amended Motion for Class Certification***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this, September 26, 2013.

                                            s/ Stefan Coleman