IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:13-cv-80093-DMM

DEBBIE LANZA, individually and on behalf of all others similarly situated,

       *Plaintiff*,

v.

UPSCALE EVENTS BY MOSAIC, LLC d/b/a THE MOSAIC GROUP, a Florida limited liability company, PALM BEACH MALL HOLDINGS, LLC, a Delaware limited liability company.

       *Defendants*.

**PLAINTIFF'S REPLY IN SUPPORT OF HER**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

As explained in Plaintiff's Motion for Partial Summary Judgment (Dkt. 85) ("Pl. Mot."), the undisputed facts in this case establish that Defendant Upscale Events by Mosaic, LLC ("Mosaic") violated the TCPA by using an ATDS to send identical text messages to tens of thousands of cell phone numbers and that Defendant Palm Beach Mall Holdings, LLC ("PBMH"), which directed the text messaging campaign and benefitted from it, is vicariously liable for Mosaic's conduct. In response to Plaintiff's Motion, PBMH argues that Plaintiff is not entitled to summary judgment because (1) the undisputed facts do not establish that Mosaic used an ATDS, (2) some putative class members might have consented to receive text messages, and (3) PBMH is not vicariously liable for Mosaic's sending of the text message both as a matter of law (because the TCPA supposedly does not allow for vicarious liability) and of fact (because Plaintiff supposedly failed to establish PBMH's control over Mosaic). As explained below, all of these arguments are without merit and Plaintiff's Motion should be granted.

1

**I.     THE UNDISPUTED FACTS ESTABLISH THAT MOSAIC USED AN ATDS.**

The TCPA defines an ATDS as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). As explained in Plaintiff's Motion, the equipment used by Mosaic to send the text messages at issue here had the capacity to—and did—store and dial telephone numbers to be called, and it consequently falls within the statutory definition of an ATDS. (Pl. Mot. at 5.)

In response, PBMH argues that Plaintiff has failed to establish that the equipment used by Mosaic had the capacity to use a "a random or sequential number generator." (PBMH Resp. at 4.)[1] PBMH does not, however, elaborate on the meaning or relevance of this "generator" language or explain how Plaintiff's citation to Mosaic's own Rule 30(b)(6) designee's testimony describing Mosaic's equipment fails to establish that the equipment used falls within the statutory definition of an ATDS. Indeed, to the contrary, the FCC has explained that equipment that—like here—dials numbers from a list or database of numbers rather than generating its own list of numbers is still an ATDS despite the "number generator" language in the statutory definition. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14091 – 93 (July 3, 2003) ("[T]o exclude . . . [equipment that does not generate its own numbers] from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result."); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 15391, 15392 n.5 (Nov. 29, 2012) ("The Commission has . . . concluded that this definition covers any equipment that has the specified capacity to generate numbers and dial

---

[1]     "PBMH Resp." refers to PBMH's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment (Dkt. 94).

2

them without human intervention regardless of whether the numbers called are randomly or sequentially generated *or come from calling lists*.") (emphasis altered).[2] PBMH's unelaborated reference to the "generator" language in the statutory definition of ATDS simply does not negate the undisputed facts here, which establish that the equipment used by Mosaic could, and did, store and dial tens of thousands of numbers without human intervention, and is thus an ATDS.

PBMH also argues that Mosaic's Rule 30(b)(6) designee did not testify that the equipment used was a "predictive dialer." (PBMH Resp. at 4 – 5.) This argument is irrelevant, however, given that predictive dialers are merely one type of ATDS. That certain equipment is not a predictive dialer does not mean that the equipment is not an ATDS.

Finally, PBMH argues that Plaintiff is not entitled to summary judgment on this issue because she has not provided expert testimony that the equipment used was an ATDS. (PBMH Resp. at 6 – 7.) As fully explained in Plaintiff's response to PBMH's summary judgment motion (Dkt. 99) ("Pl. Resp."), however, PBMH's assertion that expert testimony is required to establish that any particular equipment is an ATDS is wrong, and its reliance on *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)—which actually suggests the opposite—is misplaced. (Pl. Resp. at 17.) In fact, *Satterfield*, if anything, stands for the proposition that lay witness testimony can carry as much weight on the ATDS issue as expert testimony, as the Ninth Circuit there found that competing lay witness and expert testimony demonstrated a disputed issue of material fact sufficient to preclude summary judgment. (*See* Pl. Resp. at 17 (citing *Satterfield*, 569 F.3d at 951).)

Simply put, none of the arguments proffered by PBMH in response to Plaintiff's Motion undermine in any way the undisputed evidence that the equipment used here was an ATDS. And,

---

[2]  PBMH does not dispute that, as noted in Plaintiff's Motion at 4 n.4, FCC interpretations of the TCPA are entitled to *Chevron* deference.

3

because Defendants do not dispute that the equipment was used to make calls to cell phones (the other elements of a TCPA violation), summary judgment should be granted in Plaintiff's favor on the issue of Mosaic's TCPA violation.

## II. PBMH'S CONSENT ARGUMENT IS MISPLACED; TEXT MESSAGE RECIPIENTS THAT CONSENTED TO RECEIVE THEM ARE NOT MEMBERS OF THE PUTATIVE CLASS.

PBMH next argues that "[u]nder no circumstances are Mosaic and PBMH liable under the TCPA for the text messages Mosaic sent to the individuals who provided their express consent." (PBMH Resp. at 7.) PBMH is of course correct that it cannot be held liable for sending text messages to people who consented to receive them. Where PBMH's argument goes awry, however, is in asserting that summary judgment is not appropriate here because "certain of the putative class members authorized Mosaic to send them text messages." (*Id*.) The assertion that "certain of the putative class members" consented is false, because any individuals who consented are specifically excluded from the class. The putative class is defined as:

> All individuals in the United States who, in August 2012, received a text message on their cellular telephone from the phone number (954) 736-6345 stating "Over 1500 construction jobs are available for the New Palm Beach Mall. Attend the Job Fair tomorrow Aug. 21 Gaines Park 9-4 PM Register at http://pboutletmall.com." *Excluded from the Class are any individuals who provided their cellular telephone number directly to Defendant Upscale Events by Mosaic, LLC before their receipt of the text message call.*"

(Pl. Am. Mot. Class Cert. at 2) (Dkt. 83) (emphasis added). Thus, *by definition*, none of the putative class members authorized Mosaic to send them text messages because anyone who even arguably did (i.e., anyone who provided their cellular telephone number directly to Mosaic) is not a member of the class. That some people *outside the class* may have provided their cell phone numbers to Mosaic and, thus, arguably consented to receive text messages does not preclude summary judgment in favor of Ms. Lanza and the class as to whether they provided

4

express consent to be texted—Mosaic simply extracted Lanza's and every other class member's cell phone number from the State of Florida voting records[3] before sending an unlawful text message to each of them. (*See* Pl. Am. Mot. Class Cert. at 9 – 11.)

### III. PBMH IS VICARIOUSLY LIABLE FOR MOSAIC'S SENDING OF THE TEXT MESSAGES.

Finally, PBMH argues that it is not vicariously liable for Mosaic's violation of the TCPA. As explained in Plaintiff's Motion at 6 – 12, however, PBMH *is* vicariously liable because PBMH expressly authorized Mosaic to send the text messages as part of its recruiting campaign for PBMH, PBMH, at best, was negligent in supervising Mosaic's recruiting efforts, and/or PBMH ratified Mosaic's sending of the text messages.[4]

PBMH responds by first asserting that "[f]ederal courts disagree" on whether the TCPA provides for vicarious liability (PBMH Resp. at 8), which is a gross mischaracterization of the state of the law. As explained in Plaintiff's Response, every federal court but one to address the issue (as well as the FCC) has agreed that parties may be held vicariously liable under Section (iii) of the TCPA, the provision at issue here. (*See* Pl. Resp. at 3 – 4; *see also* Pl. Mot. at 6 – 7.) The single exception to this otherwise uniform body of law is *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-CIV, 2013 WL 1899616 (S.D. Fla. May 8, 2013). But as discussed in Plaintiff's Response at 5 – 8, *Mais* improperly exercised jurisdiction over and failed to give proper deference to FCC determinations. Simply put, *Mais* is an incorrectly decided outlier that should not be followed here over the otherwise uniform opinion of federal courts and FCC

---

[3] The State of Florida voting records were the only other source from which Mosaic obtained cell phone numbers for its text message campaign—thus, if an individual did not provide her cell phone number directly to Mosaic but received the text message at issue, Mosaic necessarily obtained her cell phone number from the voting records. (Pl. Am. Mot. Class Cert. at 9 – 11.)

[4] Plaintiff uses "and/or" here because while the undisputed facts establish that PBMH engaged in all of these activities, any alone is sufficient to establish its vicarious liability.

5

decisions holding that Section (iii) of the TCPA provides for vicarious liability.

PBMH next argues that, even assuming the TCPA provides for vicarious liability—which, as discussed above, it does—PBMH should not be held vicariously liable for Mosaic's sending of the text messages because it did not exercise control over Mosaic's recruiting efforts. (PBMH Resp. at 9 – 11.) This argument is without merit, however, because the relevant question here is not whether PBMH *did* exercise control over Mosaic, but whether PBMH *had the right to* exercise control over Mosaic. *See* Restatement (Third) of Agency § 1.01 cmt. c ("A principal's failure to exercise the right of control does not eliminate it . . . ."); *U.S. v. Tianello*, 860 F. Supp. 1521, 1524 (M.D. Fla. 1994) ("Whether or not control is exercised by the principal is irrelevant; what is relevant is whether the principal has the right to control the agent's performance."). Thus, while PBMH's response is full of assertions that it relied on Mosaic's expertise and that it "played no role" and "was not involved in" Mosaic's recruiting efforts on its behalf, (PBMH Resp. at 10-11), nowhere does PBMH dispute that it nevertheless had *the right* to control Mosaic's actions. And, as explained in Plaintiff's Motion and Response, the undisputed facts establish that PBMH indeed had such a right. (Pl. Mot. at 7 – 8, 10 – 11; Pl. Resp. at 9 – 12.)

Further, even if it were true that PBMH "did not even realize" that Mosaic had decided to send the text messages until after the fact, (PBMH Resp. at 14),—it is not [5]—given the repeated communications from Mosaic expressing its intent to use text messaging (Pl. SOF ¶¶ 18 – 24), PBMH *should have* known that Mosaic was going to send the text messages, and the undisputed facts establish that PBMH could have stopped it.[6] *See In re Dish Network*, 28 F.C.C.R. 6574,

---

[5] While PBMH cites paragraphs 30 – 33 of its statement of material facts, none of those paragraphs support its assertion that it "did not even realize" Mosaic was using text messages.

[6] *See* (Pl. SOF Exhibit B – Carabine Dep. at 57:16 – 58:1) ("[Q:] If [Ann Marie Sorrell of Mosaic] had come to you and said, I'm planning on sending 92,000 text messages to West Palm Beach residents that I pulled from the Palm Beach voting records, could you have told her not to

6592 (May 9, 2013) ("[A] seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (*or reasonably should have known*) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.") (emphasis added).

While PBMH cites several cases that it claims support not imposing vicarious liability in the circumstances here, (PBMH Resp. at 11 – 14), none are relevant. *Mais*, 2013 WL 1899616, *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079 (C.D. Cal. 2012), and *Mey v. Pinnacle Security, LLC*, No. 5:11CV47, 2012 WL 4009718 (N.D. W. Va. Sept. 12, 2012), are all distinguishable for the reasons explained in Plaintiff's Response at 12 – 14. *Freidman v. Massage Envy Franchising, LLC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641 (S.D. Cal. June 13, 2013) is distinguishable because it was decided on a motion to dismiss where the plaintiffs had not alleged sufficient facts to establish an agency relationship. Here, in contrast, it is the undisputed facts obtained during discovery—not conclusory allegations in a complaint—that establish PBMH's vicarious liability. Finally, the question in *Hurst v. Mauger*, No. 11 C 8400, 2013 WL 1686842 (N.D. Ill. Apr. 16, 2013), was whether defendant Mauger had sent text messages "on behalf of" defendant Plimus. The court held that Mauger did not send text messages on behalf of Plimus because, unlike here, Mauger sent the texts to market and sell its own products; Plimus was merely an intermediary between Mauger and purchasers of Mauger's product. 2013 WL 1686842 at *6. Here, there is no question that Mosaic sent text messages not to market its own services, but to advertise on PBMH's behalf. (Plaintiff's Statement of

---

go forward with that? . . . A[:] I could have said not to go forward with that.  Q[:] Would you expect that she would follow your directions on that point?  A[:] I would expect she would."); (Pl. SOF Exhibit D – Sorrell Dep. at 62:6 – 7) (Sorrell explaining that "[i]f [Tom Carabine of PBMH] had said do not do a particular service, yes, I would have listened to him.").

Undisputed Material Facts, Dkt. 86 ("Pl. SOF") at ¶¶ 33 – 35.)

The last argument PBMH makes in an attempt to avoid vicarious liability is that it did not ratify Mosaic's conduct when it paid Mosaic for sending the text messages. (PBMH Resp. at 14 – 16.) First, PBMH asserts that ratification does not apply because there was no agency relationship here. (PBMH Resp. at 15.) But as discussed in Plaintiff' Motion at 7 – 8 and above, an agency relationship *does* exist here because the parties agreed that Mosaic would act on PBMH's behalf while PBMH retained the right to control Mosaic (even if that right was not always exercised). *See* Restatement (Third) of Agency § 1.01 cmt. c ("A relationship is not one of agency . . . unless the agent consents to act on behalf of the principal, and the principal has the right throughout the duration of the relationship to control the agent's acts."). Second, PBMH argues that it did not ratify Mosaic's conduct because it did not have "knowledge of material facts" pertaining to Mosaic's sending of the text messages. (PBMH Resp. at 15 – 16.) But PBMH fails to explain what "material facts" it lacked knowledge of when it paid Mosaic's bill, which stated that Mosaic had sent out 92,000 text messages in eight hours. (Pl. SOF Ex. R at PBMH000769.) As PBMH provides no explanation of these illusive "material facts," it can't rely on them to avoid vicarious liability resulting from its ratification of Mosaic's conduct.

In short, as discussed in Plaintiff's Motion, the undisputed facts establish that PBMH is vicariously liable for Mosaic's violation of the TCPA because PBMH expressly authorized and directed Mosaic to send the text messages as part of its recruiting campaign for PBMH, at best PBMH was negligent in supervising Mosaic's recruiting efforts, and PBMH ratified Mosaic's sending of the text messages. None of the arguments raised by PBMH in its response call any of that into question. As a result, Lanza's motion for partial summary judgment should be granted.

## **CONCLUSION**

For the reasons discussed in Plaintiff's Motion and above, this Court should grant Plaintiff's motion for partial summary judgment against Mosaic and PBMH.

Respectfully submitted,

**DEBBIE LANZA**, individually and on behalf of all others similarly situated,

Dated: September 26, 2013

By: s/ Stefan Coleman
    One of Plaintiff's Attorneys

Stefan Coleman, Esq. (#30188)
Law Offices of Stefan Coleman, LLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
Fax: 888.498.8946
law@stefancoleman.com

By: s/ Ari J. Scharg
    One of Plaintiff's Attorneys

Rafey S. Balabanian
Ari J. Scharg*
Benjamin S. Thomassen
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6380
rbalabanian@edelson.com
ascharg@edelson.com
bthomassen@edelson.com

* Admitted *pro hac vice*.

## CERTIFICATE OF SERVICE

      I, Stefan Coleman, certify that on September 26, 2013, I served the above and foregoing ***Plaintiff's Reply in Support of Her Motion for Partial Summary Judgment***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this, the 26th day of September, 2013.

                                            /s/ Stefan Coleman