**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 9:13-cv-80093-DMM

DEBBIE LANZA, individually and on behalf of all
others similarly situated,

   *Plaintiff*,

v.

UPSCALE EVENTS BY MOSAIC, LLC
d/b/a THE MOSAIC GROUP, a Florida limited
liability company, and PALM BEACH MALL
HOLDINGS LLC, a Delaware limited liability
company,

   *Defendants*.

**PLAINTIFF'S *UNOPPOSED* MOTION AND MEMORANDUM IN SUPPORT OF
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**Respectfully submitted by:**

Rafey S. Balabanian
Ari J. Scharg (*Admitted Pro Hac Vice*)
Benjamin S. Thomassen
EDELSON LLC
350 N. LaSalle St., Suite 1300
Chicago, Illinois 60604
Tel: (312) 589-6380
rbalabanian@edelson.com
ascharg@edelson.com
bthomassen@edelson.com

Stefan Coleman, Esq. (#30188)
LAW OFFICES OF STEFAN COLEMAN PLLC
201 S. Biscayne Blvd, 28th Floor
Miami, Florida 33131
Tel: (877) 333-9427
law@stefancoleman.com

*Attorneys for Plaintiff and the Putative Class*

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  THE TCPA ...........................................................................................................3

III.  NATURE OF THE LITIGATION .......................................................................3

    A.  Plaintiff's Allegations and the Litigation History .................................3

    B.  The Parties' Renewed Settlement Efforts and Negotiations ...............5

IV.  TERMS OF THE SETTLEMENT .......................................................................6

    A.  Class Definition ........................................................................................6

    B.  Monetary Relief .......................................................................................6

    C.  Prospective Relief ....................................................................................6

    D.  Additional Relief ......................................................................................7

        1.  *Payment of Settlement Administration Expenses* .....................7

        2.  *Incentive Award for Class Representative* ................................7

        3.  *Payment of Attorneys' Fees and Expenses* ...............................7

        4.  *Release* ..........................................................................................7

V.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED
    FOR SETTLEMENT PURPOSES .......................................................................8

    A.  The Numerosity Requirement is Satisfied .............................................8

    B.  The Commonality Requirement is Satisfied ..........................................9

    C.  The Typicality Requirement is Satisfied ..............................................10

    D.  The Adequacy of Representation Requirement is Satisfied ...............10

    E.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ....12

        1.  *Common Questions of Law and Fact Predominate* ................12

        2.  *A Class Action is the Superior Method for Adjudicating this
            Controversy* ................................................................................13

**VI.** **PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL** ...........15

**VII.** **THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL** ........................................................................15

**VIII.** **THE NOTICES SHOULD BE APPROVED IN FORM AND SUBSTANCE** ...........19

**IX.** **CONCLUSION** ....................................................................................20

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) ......................................................8, 13, 14

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)....................................................................19

*Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012) ...............................................................3

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................9, 13

**United States Circuit Court of Appeals Cases**

*Cooper v. Southern Co.*, 390 F.3d 695 (11th Cir. 2004)..............................................................10

*Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986)..................................................9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .........................................................13

*Hines v. Widnall,* 334 F.3d 1253 (11th Cir. 2003).....................................................................10

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992).......................................................16

*Kennedy v. Tallant*, 710 F.2d 711 (11th Cir. 1983) ....................................................................10

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987) ..........................................11

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984)................................10

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010) ................................................................................13

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ......................................3, 13

*Sikes v. Teleline, Inc.*, 281 F.3d 1350 (11th Cir. 2002)..............................................................14

**United States District Court Cases**

*Access Now, Inc. v. Claires Stores, Inc.*,
    No. 00-cv-14017, 2002 WL 1162422 (S.D. Fla. May 7, 2002).......................................16

*Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 700 (S.D. Fla. 2004) ....................................9, 12, 14

*Arthur v. Sallie Mae, Inc.*, No. 10-cv-198 (W.D. Wash.).......................................................19 n.4

*Birchmeier v. Caribbean Cruise Line, Inc.*,
No. 12-cv-4069, 2012 WL 7062748 (N.D. Ill. Dec. 31, 2012)....................................18 n.3

*Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316 (S.D. Fla. 2012) ................................13

*Cellco P'ship v. Plaza Resorts Inc.*,
No. 12-cv-81238, 2013 WL 5436553 (S.D. Fla. Sept. 27, 2013) ......................................18

*Ellison v. Steve Madden, Ltd.*, No. 11-cv-05935 (C.D. Cal.)....................................................12, 19

*Espinal v. Burger King Corp., et al.,* No. 09-cv-20982 (S.D. Fla.)*;*.........................................15

*Fabricant v. Sears Roebuck*, 202 F.R.D. 310 (S.D. Fla. 2001) ............................................8, 9, 11

*Fresco v. Auto Data Direct, Inc.*,
No. 03-cv-61063, 2007 WL 2330895 (S.D. Fla. May 14, 2007).......................................15

*Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697 (M.D. Fla. 2000) ...........................................10

*Gutierrez, et al. v. Barclays Group, et al*., No. 10-cv-1012 (S.D. Cal.) ....................................2, 19

*Harris v. comScore*, No. 11-cv-5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013).....................12

*In re Checking Account Overdraft Litig.*, 286 F.R.D. 645 (S.D. Fla. 2012)............9, 11, 12, 13, 14

*In re Domestic Air Transport.*, 148 F.R.D. 297 (N.D. Ga. 1993)....................................................16

*In re Facebook Privacy Litig.*, No. 10-cv-02389-JW (N.D. Cal.) ..................................................12

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-02261 (S.D. Cal.)...........................19 n.4

*In re Netflix Privacy Litigation*, No. 11-cv-00379-EJD (N.D. Cal.)..............................................11

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004) .......................14

*Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142 (N.D. Cal.)..........................................19 n.4

*Kramer v. Autobytel Inc.,* 759 F. Supp. 2d. 1165 (N.D. Cal. 2010) .......................................18 n.3

*Kramer v. Autobytel Inc.*, No. 10-cv-02722 (N.D. Cal.)...........................................2, 12, 15, 18

*Leszczynski v. Allianz Ins*., 176 F.R.D. 659 (S.D. Fla. 1997).........................................................8

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005) .......................................17, 18

*Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-6344 (N.D. Ill.)...........................12, 15

*Mais v. Gulf Coast Collection Bureau, Inc.*,
   No. 11-cv-61936, 2013 WL 1899616 (S.D. Fla. May 8, 2013)........................................17

*Manfred v. Bennett Law, PLLC*,
   No. 12-cv-61548, 2012 WL 6102071 (S.D. Fla. Dec. 7, 2012)..................................18 n.3

*Miller v. Red Bull*, No. 12-cv-04961 (N.D. Ill.).............................................................12

*Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D. Cal.) .............................................19 n.4

*Satterfield v. Simon & Schuster, Inc.*, No. 06-cv-02893 (N.D. Cal.)...............................12, 15, 18

*Smith v. Wm. Wrigley Jr. Co.*,
   No. 09-cv-60646, 2010 WL 2401149 (S.D. Fla. Jun. 15, 2010)........................................16

*Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996) .........................................8

*Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1998)........................................16

*Weinstein, v. The Timberland Co.*, No. 06-cv-0454 (N.D. Ill.) ...................................2, 18

**Statutory Provisions and Federal Rules**

47 U.S.C. § 227....................................................................................................3

Fed. R. Civ. P. 23........................................................................................ *passim*

**Agency Rules and Orders**

FCC Declaratory Ruling, Docket No. 11-50 (May 9, 2013) ....................................18 n.3

**Secondary Sources**

Alba & Conte, 4 Newberg on Class Actions (4th ed. 2002) ...........................................15, 19

Manual for Complex Litig. (3rd ed. 1995) ...................................................................15, 16

Manual for Complex Litig. (4th ed. 2004)....................................................................8

I.     INTRODUCTION.

This putative class action lawsuit against Defendants Palm Beach Mall Holdings LLC ("PBMH") and Upscale Events by Mosaic, LLC ("Mosaic") arises from their mobile promotion of the New Palm Beach Mall—a shopping mall being developed by PBMH in Palm Beach County, Florida.  Plaintiff Debbie Lanza alleges that in August 2012, Defendants "scraped" the State of Florida voter records database for cell phone numbers within the mall's geographic location, and then transmitted unsolicited and unauthorized text messages to the cell phones of approximately 90,000 West Palm Beach residents.  Plaintiff alleges that such conduct violates the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

After nearly a year of hard-fought and contentious litigation—which included both written and oral discovery, a settlement conference with Magistrate Judge Brannon, the briefing of dispositive motions like Plaintiff's motion for class certification and cross-motions for summary judgment, and extensive arm's-length settlement negotiations—the Parties have reached a proposed Settlement that, if approved, will finally resolve the claims against Defendants related to their alleged violations of the TCPA.  As explained below, the Court should grant preliminary approval to the Settlement because the relief it offers is a valuable result for the proposed Settlement Class.[1]

Under the terms of the Settlement, Defendants have agreed that their monetary obligations (termed the "Monetary Relief Cap" in the Settlement Agreement) shall be up to $6,500,000, which will pay all valid claims made by Settlement Class Members of up to $150, special master fees, notice and administrative expenses, and any attorneys' fees to Class Counsel and incentive award to Plaintiff Lanza, as Class Representative, that are ultimately awarded by the Court.  As importantly, Defendants have also agreed to implement the prospective measures necessary to ensure that they don't send unauthorized text messages to the Settlement Class or the public in the future.

All told, the Parties' proposed Settlement is exceedingly fair and well within the range of

---

[1]     Unless otherwise stated herein, capitalized terms shall have the same meaning as set forth in the Parties' Class Action Settlement Agreement, attached as Exhibit 1.

preliminary approval for several reasons.  First, it provides certainty for the Settlement Class where their recovery would otherwise be uncertain, especially given Defendants' ability and willingness to continue their vigorous defense of the case.  Second, the Settlement was reached on the eve of trial (which is scheduled to begin in just two weeks), and only after first engaging in substantial litigation, discovery, dispositive motion practice, and extensive arm's-length negotiations.  Third, the deal was not conditioned on any set amount of attorneys' fees or incentive award to proposed Class Counsel or Lanza, which speaks to the fundamental fairness of the process.[2]  Further, the results achieved for the Class through the Settlement parallel—and in some cases, exceed—those reached in other TCPA settlements that have received final approval from federal courts throughout the country.  *See, e.g., Weinstein, v. The Timberland Co*., No. 06-cv-00484 (Dkt. 93) (N.D. Ill. Dec. 18, 2008) (providing for a cash payment of $150 to each class member); *Kramer v. Autobytel Inc*., No. 10-cv-02722-CW (Dkt. 148) (N.D. Cal. Feb. 10, 2012) (providing for a cash payment of $100 to each class member); *Gutierrez, et al. v. Barclays Group, et al*., No. 10-cv-1012 (Dkt. 58) (S.D. Cal. Mar. 12, 2012) (providing for a cash payment of $100 to each class member).

For all these reasons and as described further below, Plaintiff Lanza respectfully requests that the Court grant her unopposed motion for preliminary approval in its entirety.

## II.    THE TCPA.

A brief summary of the law that forms the basis of Plaintiff's claims will put the proposed Settlement in context.  Congress passed the TCPA in response to "voluminous consumer

---

[2]    Instead, the Settlement establishes a process by which the Parties will attempt to agree upon the amounts of the attorneys' fees and incentive awards.  To that end, in the days following the filing of this motion, the Parties will attempt to negotiate the amount of such awards between themselves, and if unsuccessful, will submit the issues to mediation with a third-party neutral.  In the event they are unable to reach agreement, proposed Class Counsel will file a petition with the Court, which Defendants may contest.  In the meantime, for notice purposes—and to the extent that the Parties are unable to reach agreement on these issues before class notice is scheduled to be disseminated pursuant to the Settlement—all such notice documents (i.e., the postcards, emails, publication notice, and Settlement Website), shall indicate that proposed Class Counsel have unilaterally agreed to limit their fee petition to $2,145,000, that Lanza has agreed to limit her incentive award to $15,000, and that any ultimate agreement on such amounts will be posted to the Settlement Website at least fourteen (14) days before the objection deadline.

complaints" and to prohibit "intrusive nuisance calls" it determined were invading the privacy of telephone subscribers nationwide.  *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).  As such, the TCPA provides a means to combat the growing threat to privacy being caused by automated telemarketing practices, and states that:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system[.]

47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA applies with equal force to text messages as it does to voice calls made to cell phones.  *Satterfield*, 569 F.3d at 954.  The TCPA is a strict liability statute, and it sets statutory damages in the amount of $500 per violation (potentially trebled to $1,500 if the conduct is proven willful), and provides for injunctive relief prohibiting the further transmission of such messages.  *See* 47 U.S.C. § 227(b)(3)(A-B).

## III.    NATURE OF THE LITIGATION.

### A.    Plaintiff's Allegations and the Litigation History.

On January 29, 2013, Plaintiff Lanza filed a putative class action complaint alleging that Defendant Mosaic, a marketing company, and then-Defendant EMJ Corporation ("EMJ"), a construction company, violated the TCPA by sending unsolicited text messages promoting the New Palm Beach Mall to thousands of cell phones without consent.  (Dkt. 1.)  Plaintiff alleged that the text messages contained a hyperlink to the mall's promotional website and an announcement concerning a job fair for construction workers.  (Dkt. 1 ¶ 17.)  Mosaic and EMJ answered the complaint by denying the substance of the allegations and setting forth numerous affirmative defenses.  (Dkts. 17, 24.)

On April 18, 2013, the Court issued a pretrial scheduling order (Dkt. 15), and referred the case to Magistrate Judge Brannon for a settlement conference, which was ultimately scheduled to proceed on July 23, 2013.  (Dkts. 16, 32.)  Following their Rule 26(f) conference, the parties exchanged initial disclosures and Plaintiff propounded her First Set of Interrogatories and Requests

for the Production of Documents.  (*See* Declaration of Ari J. Scharg ("Scharg Decl." ¶ 4, a true and accurate copy of which is attached as Exhibit 2.)

Based upon documents and information produced by Mosaic and EMJ early on, Plaintiff was able to identify three additional parties that she believed were directly involved in the transmission of the text messages at issue, and on May 13, 2013, moved the Court for leave to file an amended complaint adding PBMH, New England Development, Inc. ("New England"), and Eastern Real Estate, LLC ("Eastern Real Estate") as named party-defendants.  (Dkt. 23.)  After full briefing, the Court granted Plaintiff's motion over Mosaic's opposition (Dkt. 34), and Plaintiff filed her Amended Class Action Complaint on June 10, 2013.  (Dkt. 35.)  Soon after, Plaintiff and the newly-added defendants propounded written discovery on each other and served deposition notices.  (Scharg Decl. ¶ 5.)

In the weeks leading up to their settlement conference before Magistrate Judge Brannon, the parties produced and exchanged thousands of pages of documents through discovery and met and conferred at length in an attempt to narrow the facts and issues in dispute.  (*Id.* ¶ 6.)  For her part— based on the documents and information produced—Plaintiff determined that then-defendant EMJ was not a necessary party to the lawsuit, and that, in the interests of efficiency and judicial economy, it would be appropriate to voluntarily dismiss EMJ, without prejudice.  (*Id.*)  As such, Plaintiff and EMJ filed a Joint Stipulation of Dismissal prior to the settlement conference, which the Court accepted and entered on July 22, 2013.  (Dkt. 62.)

The following day, on July 23, 2013, the Parties—including Plaintiff Lanza and the Defendants' respective corporate representatives—participated in an in-person settlement conference before Magistrate Judge Brannon.  (Dkt. 65.)  Over the course of the day, the Parties engaged in several rounds of productive discussions, but ultimately were unable to agree on the terms or structure of a settlement at that time.  (Scharg Decl. ¶ 7.)  Nonetheless, based upon additional information provided by defendants at the settlement conference (in addition to that already produced during discovery), Plaintiff determined that New England and Eastern Real Estate were not necessary parties to the lawsuit, and that, in the interests of efficiency and judicial economy, it would

be appropriate to voluntarily dismiss them, without prejudice.  (*Id.* ¶ 8.)  As such, the parties filed a Joint Stipulation of Dismissal, which the Court accepted and entered on September 6, 2013.  (Dkt. 93.)

Following the settlement conference, Plaintiff continued to engage in discovery with the remaining Defendants—PBMH and Mosaic—which included a second production of several thousand more documents, the deposition of Plaintiff Lanza, and the Rule 30(b)(6) depositions of Defendants' corporate representatives.  (Scharg Decl. ¶ 9.)  The Parties also agreed to continue exploring the possibility of settlement in the weeks after the settlement conference.  (*Id.*)  However, after reaching an impasse, the Parties decided to table further settlement discussions until after discovery was closed and dispositive motions were filed.  (*Id.*)

On August 26, 2013—two weeks after discovery closed—Defendant PBMH filed its motion for summary judgment (Dkt. 79), and Plaintiff filed her motion for class certification (Dkt. 83) and a cross-motion for partial summary judgment (Dkt. 85).  These motions are fully briefed and remain pending.

### B.      The Parties' Renewed Settlement Efforts and Negotiations.

Immediately after filing their opening motions on August 26, 2013, the Parties re-doubled their settlement efforts in an attempt to reach a classwide resolution.  (Scharg Decl. ¶ 10.)  Over the course of the next four weeks, they engaged in extensive discussions in an attempt to negotiate a settlement structure.  (*Id.* ¶ 11.)  This time, the Parties made substantial progress towards settlement and agreed to work through the remaining issues that stood in the way of a complete resolution.  (*Id.*)  Finally, on October 3, 2013, after several additional rounds of arm's-length negotiations, the Parties were finally able to bridge the gap and reach an agreement on the principal terms of a settlement, which they memorialized in a Memorandum of Understanding.  (Scharg Decl. ¶ 12.)  The Parties then began negotiating the final terms of the settlement, and over the next three weeks, exchanged numerous drafts of the full settlement agreement and related documents, until all were finalized.  (*Id.*)  In the meantime, pursuant to the Court's directives (Dkt. 108), the Parties continued to adhere to the Court's Scheduling Order (Dkt. 15), and, as such, timely filed their Joint Pretrial Stipulation (Dkt.

109), and disclosed their respective trial witness and exhibit lists. (Dkt. 109, Exhibits 1-5.)  On October 28, 2013, the Parties executed the Settlement, which is now before the Court, and which Plaintiff respectfully requests the Court preliminarily approve.

## IV.  THE TERMS OF THE SETTLEMENT.

The terms of the settlement are set forth in the Settlement Agreement (*see* Ex. 1) and are briefly summarized below:

A.   **Class Definition.**  The Settlement Class is comprised of all individuals within the United States who, in August 2012, received a text message promoting an August 21, 2012 job fair for the New Palm Beach Mall sent by or on behalf of Upscale Events by Mosaic, LLC and/or Palm Beach Mall Holdings LLC, without having provided either company prior express consent. (Agreement ¶ 1.29.)  Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this action and members of their immediate families; (2) the Defendants, the Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest, and any of their current or former officers, directors, employees, representatives, managers, members, and any other Person acting for or on behalf of either or both Defendants; (3) Persons who properly execute and file a timely request for exclusion from the Settlement Class; and (4) the legal representatives, successors or assigns of any such excluded persons.

B.   **Monetary Relief.**  Defendants have agreed to establish a Monetary Relief Cap in the amount of $6,500,000, from which it will provide a cash payment of up to $150 to each Settlement Class Member who submits an Approved Claim.  In the event that, after payment of all Settlement Administration Expenses, the Fee Award to proposed Class Counsel, and the incentive award to the Class Representative, the total amount required to pay $150 on each Approved Claim exceeds the $6,500,000 Monetary Relief Cap, then each Settlement Class Member with an Approved Claim will receive a *pro rata* share of the funds remaining under the Monetary Relief Cap.  (Agreement ¶¶ 1.14, 2.1(a).)

C.   **Prospective Relief**.  In addition to the monetary relief above, Defendants have

agreed that they will refrain from sending directly or indirectly (i.e., through contractual agreements with others) any text messages otherwise prohibited by the TCPA unless the recipient has provided prior express consent to receive them.  Defendants have also agreed to maintain documentation of such prior express consent for a period of four years.  (Agreement ¶ 2.2.)

      **D.**    **Additional Relief.**  In addition to the monetary and prospective relief described above, Defendants have also agreed to provide the following:

      **1.**    ***Payment of Settlement Administration Expenses***:  Defendants have agreed to pay all notice and administration expenses, up to $150,000.  Any overage will be paid by Class Counsel.  All notice and administrative costs paid by Defendants shall be deducted from the $6,500,000 Monetary Relief Cap.  (Agreement ¶¶ 1.14, 1.27.)

      **2.**    ***Incentive Award for Class Representative***:  In addition to any award available to her under the Settlement, and in recognition of her efforts on behalf of the Settlement Class, Defendants agree to pay Plaintiff Lanza an incentive award, from the Monetary Relief Cap, in an amount to be determined by the Court, subject to any recommendations that the Parties may mutually agree to make following negotiation between themselves, and failing that, mediation with a third-party neutral.  In the event that they do not reach agreement, Defendants will be entitled to oppose the amounts claimed by Plaintiff and the basis for determining those amounts under applicable law.  (Agreement ¶¶ 1.14, 8.)

      **3.**    ***Payment of Attorneys' Fees and Expenses***:  Under the Settlement, Defendants have agreed to pay Class Counsel reasonable attorneys' fees and reimbursement of expenses in this Action, from the Monetary Relief Cap, in an amount to be determined by the Court, subject to any recommendations that the Parties may mutually agree to make following negotiation between themselves, and failing that, mediation with a third-party neutral.  In the event that they do not reach agreement, Defendants will be entitled to oppose the amounts claimed by Class Counsel and the basis for determining those amounts under applicable law.  (Agreement ¶¶ 1.14, 8.)

      **4.**    ***Release***:  In exchange for the relief described above, Defendants, and each of their related entities and affiliated persons, will receive a full release related to the alleged claims in

the Action, the sending of Text Messages to the Settlement Class, and the Text Messages themselves. (Agreement ¶¶ 1.24–1.26, 3.1–3.2.)

## V.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

In order to grant preliminary approval of a proposed settlement, the Court should determine that the proposed settlement class is appropriate for certification.  *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004)); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a).  Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001).  Additionally, because certification under Rule 23(b)(3) is sought, Plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims.  Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16.  District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate.  *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).  Here, Plaintiff meets all of the Rule 23(a) and 23(b)(3) prerequisites and certification is proper.

### A.   The Numerosity Requirement is Satisfied.

The first prerequisite of class certification is numerosity, which requires "the class [be] so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1); *see also Fabricant*, 202 F.R.D. at 313 (requiring that joinder be impracticable, not impossible).  To satisfy this requirement, there is no "definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable."  *Id*.  However, a plaintiff must "proffer some evidence of the number of members in the purported class, or at least a reasonable estimate of that number."  *Leszczynski v. Allianz Ins*., 176 F.R.D. 659, 669 (S.D. Fla. 1997).  Generally, the numerosity requirement is satisfied when the class includes 40 or more members.  *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).  The proposed Settlement Class here consists of approximately 90,000 West Palm

Beach residents to whom the text messages at issue were sent.  (Scharg Decl. ¶ 13.)  Given the substantial size of the proposed class, the numerosity requirement is satisfied.

   **B.      The Commonality Requirement is Satisfied.**

   The second requirement for certification mandates that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied when there is "at least one issue affecting all or a significant number of proposed class members."  *Fabricant*, 202 F.R.D. at 313; *see also Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004).  The threshold for demonstrating the commonality requirement is not high and is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members."  *In re Checking Overdraft Litig.*, 275 F.R.D. 666, 673 (S.D. Fla. 2011); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545, 2556 (2011) (commonality may be demonstrated when the claims of all class members "depend upon a common contention" and "even a single common question will do.").

   In this case, all members of the proposed Settlement Class share a common claim arising out of the same alleged activity—the transmission of identical text message advertisements to their cell phones promoting the New Palm Beach Mall job fair without their prior express consent.  This single contention raises multiple common factual and legal questions, including without limitation: (i) whether an "automatic telephone dialing system" was used to send the allegedly offending messages; (ii) whether Defendants can prevail on their affirmative defense of "prior express consent" to transmit the text messages; (iii) whether the TCPA allows for vicarious liability; (iv) whether the Settlement Class Members are entitled to uniform statutory damages under the TCPA as a result of Defendants' conduct; and (v) whether those damages should be trebled due to the alleged willfulness of the conduct.  The determination of these factual and legal issues would resolve the claims of all Settlement Class Members in "one stroke."  *Dukes*, 131 S. Ct. at 2551.  Considering the common nature of the issues and facts that bind the class together, the element of commonality is satisfied. *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 700 (M.D. Fla. 2000) ("Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class

members.").

### C.     The Typicality Requirement is Satisfied.

The next requirement, typicality, requires that class representatives have claims that are typical of those of the putative class members.  Fed. R. Civ. P. 23(a)(3).  "Typicality measures whether a significant nexus exists between the claims of the named representative and those of the class at large."  *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003).  A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory."  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.").  Simply put, when the same unlawful course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met.  *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, Defendants' alleged uniform transmission of text message advertisements—without first obtaining the prior express consent of the recipients—resulted in uniform injuries to each member of the Settlement Class.  As a result, Plaintiff Lanza and the Settlement Class Members have all experienced the exact same alleged TCPA violation, share identical claims, and are entitled to identical statutory relief.  Thus, Lanza's claims for relief under the TCPA are typical of, if not identical to, those of the proposed Settlement Class, and the typicality requirement is met.

### D.     The Adequacy of Representation Requirement is Satisfied.

Finally, Rule 23(a) requires the representative parties to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This factor mandates both that: (1) the class representative possess no interests antagonistic to the settlement class and (2) that both the class representative and proposed class counsel will prosecute the action vigorously on behalf of the class.  *Fabricant*, 202 F.R.D. at 314–15 (citing *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987)).  Stated differently, "[a]dequacy exists where the named plaintiffs share common

interests with the class members and seek the same type of relief for themselves as they seek for the class." *In re Checking*, 286 F.R.D. at 654.

In this case, Plaintiff Lanza has the same interests as the other members of the proposed Settlement Class—she and each Settlement Class Members received an unauthorized promotional text message sent by Defendants, entitling them to statutory damages under the TCPA. Thus, Plaintiff Lanza has an interest in recovering the statutory damages to which she is entitled and in obtaining the prospective relief necessary to ensure that Defendants' alleged misconduct does not continue into the future. Furthermore, Plaintiff has no interests antagonistic to those of the proposed Settlement Class. (Scharg. Decl. ¶ 14.) Moreover, Plaintiff Lanza has remained actively involved in the prosecution of this case by assisting with discovery, appearing for an in-person settlement conference before Magistrate Judge Brannon, sitting for a deposition (where she, *inter alia*, expressed her understanding of this case, her role as a class representative, and the privacy interests she seeks to vindicate through this litigation), and staying in close communication with her attorneys over the course of this case. (*Id.*) In sum, Lanza's participation throughout the litigation demonstrates that she has protected and will continue to protect the interests of the absent Settlement Class Members.

Likewise, proposed Class Counsel and the lawyers at Edelson LLC have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. (*Id.* ¶ 15.) They regularly engage in major complex litigation involving mobile technologies, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (*See* Firm Resume of Edelson LLC, attached to the Scharg Declaration as Exhibit 2-A); *see also In re Netflix Privacy Litigation*, No. 11-cv-00379-EJD (Dkt. 59) (N.D. Cal. 2011) (appointed Interim Class Counsel in adversarial leadership dispute, during which the court noted that the Edelson firm "specializes in class actions relating to consumer technology and privacy issues" and that the "firm's significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class"); *In re Facebook Privacy Litig.*, No. 10-cv-02389-JW (Dkt. 69) (N.D. Cal. 2010) (noting that the attorneys

at Edelson are "pioneers in the electronic privacy class action field"); *Harris v. comScore*, No. 11-cv-5807, 2013 WL 1339262 (Dkt. 186) (N.D. Ill. Apr. 2, 2013) (achieving adversarial certification in the largest-ever privacy class action).

Most importantly, proposed Class Counsel "have pioneered the application of the TCPA to text-messaging technology" and have litigated "some of the largest consumer class actions in the country on this issue." *Ellison v. Steve Madden, Ltd.*, No. 11-cv-05935 (Dkt. 73, at 9) (C.D. Cal. May 7, 2013); *see also Kramer*, No. 10-cv-02722-CW (N.D. Cal. Feb. 10, 2012) (appointed class counsel in nationwide TCPA class action settlement); *Miller v. Red Bull*, No. 12-cv-04961 (N.D. Ill. August. 12, 2013) (same); *Satterfield v. Simon & Schuster, Inc.*, No. 06-cv-2893-CW (N.D. Cal. Aug. 6, 2010) (same); *Lozano v. Twentieth Century Fox Films Corp.*, No. 09-cv-6344 (N.D. Ill. Apr. 15, 2011) (same). As they did in each of those cases, to date, proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this Action, and they will continue to do so throughout its pendency. (Scharg Decl. ¶ 16.)

### E.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

In addition to meeting the prerequisites of Rule 23(a), in order for the Court to certify the proposed Settlement Class, Plaintiff must also meet one of the three requirements of Rule 23(b). *In re Checking*, 286 F.R.D. at 650. Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that (i) questions of law and fact common to members of the class predominate over any questions affecting only individuals and (ii) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700. The proposed Settlement Class readily meets these requirements.

### 1.   *Common Questions of Law and Fact Predominate.*

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *Dukes,* 131 S. Ct. at 2551-57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."

*Amchem*, 521 U.S. at 623.  Common issues of fact and law predominate in a case "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."  *In re Checking*, 286 F.R.D. at 655; *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . ."").  Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all members of the class in a single adjudication."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

In this case, every material issue of fact and law stems from Defendants' uniform conduct.  The Settlement Class Members' claims—as well as those of Plaintiff Lanza—all arise from Defendants' standardized conduct of sending unauthorized text messages promoting PBMH's job fair and mall.  Thus, the core factual and legal issues are the same (i.e., predominate) for each Settlement Class Member.  That is, in order to prove their claims, each Settlement Class Member need only show that (i) the text messages were transmitted by or on behalf of Defendants and (ii) the system used to transmit the messages was an ATDS.  To the extent Defendants intend to assert that the Class gave "prior express consent" to receive the subject text messages, it is well established that that is an affirmative defense to, and not an element of, a TCPA claim.  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012); *Satterfield*, 569 F. 3d at 955.  Furthermore, whether Defendants are ultimately able to raise the defense to the Class's claims is likewise a common issue "apt to drive the resolution of the litigation."  *Dukes*, 131 S. Ct. at 2551.  These and other common questions resulting from Defendants' alleged uniform misconduct clearly predominate over any issues affecting only individual members of the Settlement Class, such as the amount of damages each Class Member is entitled to recover.  Accordingly, the predominance requirement is met.

### 2.    *A Class Action is the Superior Method for Adjudicating this Controversy.*

Finally, certification of this lawsuit as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class.  As courts

have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

　　　Absent class treatment here, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that members of the Settlement Class have an interest in individual litigation or an incentive to pursue their claims individually, given the small amount of damages likely to be recovered (i.e., $500 or $1,500 if Defendants' conduct is found willful) relative to the resources required to prosecute such an action. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). Additionally, the proposed Settlement will give the Parties the benefit of finality, and because this action has now been settled, pending approval of the Court, the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case . . . would present intractable management problems. . . ."). Thus, the superiority requirement is also met.

　　　In the end, the propriety of class certification here finds further support in the fact that numerous courts in this District and nationwide have certified settlement classes based on similar facts. *See Espinal v. Burger King Corp., et al.*, No. 09-cv-20982 (Dkt. 65) (S.D. Fla. 2010)*; Satterfield*, No. 06-cv-2893 CW (N.D. Cal. 2010), *Kramer*, No. 10-cv-2722 (N.D. Cal. 2011); *Lozano*, No. 09-cv-6344 (N.D. Ill. 2011). As in those cases, Plaintiff Lanza has satisfied each of the requirements for class certification under Rules 23(a) and (b)(3). The Court should therefore certify

the proposed Settlement Class for settlement purposes.

## VI.    PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

Under Rule 23, "a court that certifies a class must appoint class counsel . . .[who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, proposed Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. (Scharg Decl. ¶ 15.) Further, proposed Class Counsel have diligently investigated and prosecuted the claims in this matter, have dedicated substantial resources to the investigation of those claims, and have successfully negotiated the settlement of this matter to the benefit of the proposed Settlement Class. (*Id.* ¶ 16.) Accordingly, the Court should appoint Rafey S. Balabanian and Ari J. Scharg of Edelson LLC as Class Counsel.

## VII.   THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL.

After determining that a proposed settlement class is appropriate for certification, courts consider whether the proposed settlement itself warrants preliminary approval. The procedure for review of a proposed class action settlement is a well-established two-step process. ALBA & CONTE, 4 NEWBERG ON CLASS ACTIONS, §11.25, at 38–39 (4th ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Id.* (quoting MANUAL FOR COMPLEX LITIG., §30.41 (3rd ed. 1995)); *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Moreover, settlement negotiations that involve arm's-length, informed bargaining with the aid of

experienced counsel support a preliminary finding of fairness.  *See* MANUAL FOR COMPLEX LITIG. at §30.42.

Further, there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation.  *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-cv-14017, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002).  This is because class action settlements ensure class members a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future."  *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).  Thus, while district courts have discretion in deciding whether to approve a proposed settlement, deference should be given to the consensual decision of the parties.  *Warren*, 693 F. Supp. at 1054 (affording "great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation").

Here, there should be no question that the proposed Settlement is "within the range of possible approval."  To start, the process used to reach the settlement was exceedingly fair.  That is, the proposed Settlement was reached only after a year of contentious and hard-fought litigation, which included the completion of substantial class- and merits-based discovery, the production of thousands of documents, the depositions of Plaintiff Lanza and several of Defendants' Rule 30(b)(6) designees, a settlement conference with Magistrate Judge Brannon, the briefing of dispositive motions like Plaintiff's motion for class certification and the Parties' cross motions for summary judgment, and extensive arm's-length settlement negotiations.  (Scharg Decl. ¶ 17.)  Moreover, the Parties agreed on the terms of the settlement through experienced counsel who—especially given that the Settlement wasn't reached until after discovery closed—possessed all the information necessary to evaluate the case and reach a fair and reasonable compromise. (*Id*. ¶ 18.)  That information shed further light on the contours of the proposed Class and Defendants' conduct, and ultimately informed the terms of the Settlement now before the Court.

The relief afforded to the Settlement Class further demonstrates the fairness, reasonableness,

and adequacy of the Settlement.  By submitting a short and simple claim form, Settlement Class Members are entitled to a cash payment of up to $150 subject to the $6,500,000 Monetary Relief Cap.  In addition to the monetary relief, Defendants have also agreed to injunctive relief, the crux of which restricts Defendants and their representatives from transmitting any otherwise prohibited text messages without first adhering to strict procedures to ensure that prior express consent from potential recipients is obtained.  (Agreement, ¶ 2.1.)  Given the various forms of relief offered under the Settlement, coupled with the robust notice plan (i.e., direct notice via First Class U.S. Mail and/or email, publication notice, and the creation of a Settlement Website), Class Counsel believe that the results achieved are well within the range of possible approval.  (Scharg Decl. ¶ 19.)

Nonetheless, Plaintiff and Class Counsel also recognize that despite their belief in the strength of Lanza's claim and her ability to ultimately secure a $500 statutory award under the TCPA, the expense, duration, and complexity of protracted litigation would be substantial, and the outcome of trial is uncertain.  (*Id.* ¶ 20); *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (noting that "uncertainties in outcome strongly favor approval of a negotiated settlement").  Plaintiff is also mindful that absent a settlement, the success of any of Defendants' defenses—especially PBMH's vicarious liability defense—could deprive the Settlement Class Members of any potential relief whatsoever.  This concern is amplified by the recent holding in *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-cv-61936, 2013 WL 1899616 (S.D. Fla. May 8, 2013), wherein a court in this District held that the TCPA does not impose vicarious liability for the making of unauthorized calls to cell phones.  In other words, under *Mais*, PBMH would avoid liability altogether because it is undisputed that Mosaic was the entity that physically made the text message calls at issue, and it would make no difference if Plaintiff showed that Mosaic was retained, controlled, and directed by PBMH to send such messages.  Given the financial condition of Mosaic, and the absence of any relevant insurance coverage, such a result would effectively deprive the Settlement Class of any monetary recovery.  (Scharg Decl. ¶ 21.)

While the *Mais* holding is at odds with the decisions of other courts in this district, *see Cellco P'ship v. Plaza Resorts Inc.*, No. 12-cv-81238, 2013 WL 5436553, at *6 (S.D. Fla. Sept. 27, 2013),

as well as other courts across the country,[3] Plaintiff would nevertheless have to contend with that ruling, and ultimately prove that PBMH knew about, controlled, and directed the text messaging campaign at issue, which presents its own set of challenges.  Further, Defendants have repeatedly indicated that absent settlement they would continue to aggressively defend this case and that they would appeal any judgment ultimately rendered in Plaintiff's favor, which would further delay recovery by the Settlement Class.  As such, the certainty of recovery that the Settlement represents also highlights its fairness and reasonableness.  *See e.g.*, *Lipuma*, 406 F. Supp. 2d 1at 1323 ("it has been held proper to take the bird in hand instead of a prospective flock in the bush.")

Finally, the Court need not rule on a blank slate when it comes to the settlement's fairness, reasonableness, and adequacy.  By making up to $150 available to each Settlement Class Member, the instant Settlement is in line with—and in some cases exceeds—the benefits conferred by other TCPA settlements that have received final approval from federal district courts throughout the country.  *See, e.g., Weinstein*, No. 06-cv-0484 (Dkt. 93) (N.D. Ill) (providing for a cash payment of $150 to each class member); *Satterfield*, No. 06-cv-02893 (Dkt. 132) (N.D. Cal.) (providing for a cash payment of $175 to each class member); *Kramer*, No. 10-cv-02722 (Dkt. 148) (N.D. Cal.) (providing for a cash payment of $100 to each class member); *Ellison*, No. 11-cv-05935 (Dkt. 73) (C.D. Cal.) (providing for a cash payment of $150 to each class member); *Gutierrez*, No. 10-cv-1012 (Dkt. 58) (S.D. Cal.) (providing for a cash payment of $100 to each class member).[4]

---

[3]      *See, e.g., Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12-cv-4069, 2012 WL 7062748, at *1 (N.D. Ill. Dec. 31, 2012) ("The Court also rejects defendants' contention that liability attaches under the TCPA only to the party that actually placed the call . . . A Congressional enactment that permitted this would be absurd indeed. Fortunately that is not the law under the TCPA"); *Manfred v. Bennett Law, PLLC*, No. 12-cv-61548, 2012 WL 6102071, at *3 (S.D. Fla. Dec. 7, 2012) (finding that allegations against two defendants under one TCPA count were proper, where one defendant made ATDS calls on behalf of another); *Kramer v. Autobytel Inc.*, 759 F. Supp. 2d 1165, 1170 (N.D. Cal. 2010) ("courts have held both advertisers and advertisement broadcasters subject to liability under the TCPA")*; see also* FCC Declaratory Ruling, Docket No. 11-50, at ¶ 35 (May 9, 2013) ("While section 227(b) does not contain a provision that specifically mandates or prohibits vicarious liability, we clarify that the prohibitions contained in section 227(b) incorporate the federal common law of agency and that such vicarious liability principles reasonably advance the goals of the TCPA").

[4]      While a majority of the TCPA text-spam settlements provide for payments in the $100 –

For all of these reasons, Plaintiff and proposed Class Counsel firmly believe that the monetary and prospective relief provided by the Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of approval. (Scharg Decl. ¶ 22.) Accordingly, the Court should grant preliminary approval.

## VIII.   THE NOTICES SHOULD BE APPROVED IN FORM AND SUBSTANCE.

To satisfy the requirements of both Rule 23 and Due Process, Rule 23(c)(2)(B) provides that "for any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Rule 23(e)(1) similarly requires that the notice be reasonably disseminated to those who would be bound by the court's judgment.  Notice is proper as long as the average class member would be able to understand it, NEWBERG § 11:53 at 167, and the substance of the notice describes the nature of the action, the definition of the class to be certified, and the class claims and defenses at issue.  *See* Fed. R. Civ. P. 23(c)(2)(B).  Further, notice must also explain that settlement class members may enter an appearance through counsel or request to be excluded from the settlement class so as not to be bound by any judgment.  *Id.*

The Parties have agreed upon a multi-part notice plan that easily satisfies the notice requirements of both Rule 23 and Due Process.  First, Mosaic will produce a list of all known names and addresses of the Settlement Class Members in their possession, including those identified through a search of the State of Florida voting records database that was produced by Mosaic during discovery, using the same search metrics that it used to generate the Settlement Class Members' cell phone numbers in the first place (the "Class List").  (Agreement ¶ 4.2(a).)  Then, the Settlement

---

$200 range, there are a few outliers.  *See, e.g., Pimental v. Google, Inc.*, No. 11-cv-02585 (Dkt. 107) (N.D. Cal. June 26, 2013) (providing a cash payment of $500, or a *pro rata* share of the settlement fund, to each class member); *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142 (Dkt. 94) (N.D. Cal. Apr. 2, 2012) (providing for a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-02261 (Dkt. 97) (S.D. Cal. Feb. 15, 2013) (providing for a $20 voucher or $15 cash to each class member); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-198 (Dkt. 266) (W.D. Wash. Sept. 17, 2012) (providing for a $20-$40 cash payment to each class member).

Administrator will send direct Notice via First Class U.S. Mail, with an accompanying Claim Form, return postage pre-paid, to each physical address contained in the Class List.  (*Id*. ¶ 4.2(b); *See* Exs. 1-A, 1-B.)  To the extent that only email addresses are available for certain Settlement Class Members, then the Settlement Administrator shall send Notice to such Settlement Class Members via email, along with an electronic link to the Claim Form.[5]  (*See* Exs. 1-A, 1-C.)  The email itself will also include a hyperlink to the Settlement Website, located at www.palmbeachtextsettlement.com, which serves as the "long-form" notice, provides access to relevant court documents, and allows Settlement Class Members to electronically submit claim forms online.

 To supplement the direct postcard and email notice, the Parties will also provide publication notice by purchasing one daily insertion and one Sunday insertion of one-sixth page ad space in publications geographically targeted to reach the Settlement Class Members (i.e., 90,000 West Palm Beach residents), including the South Florida Sun-Sentinel, Boca Raton Tribune, Palm Beach Daily News, Palm Beach Post, El Latino Semanal, and Semanario Accion.  (Agreement. ¶ 4.2(c); *See* Ex. 1-D.)  Finally, Defendants will cause notice of the proposed Settlement to be served, pursuant to 28 U.S.C. § 1715, within ten (10) days after it is filed with the Court, to the Attorneys General of each U.S. State in which Settlement Class Members reside, the Attorney General of the United States, and other required government officials. (Agreement ¶ 4.2(e).)

 In sum, the proposed methods for providing notice to the Settlement Class fully comport with both Rule 23 and Due Process and should be approved by the Court.

**IX.**   **CONCLUSION.**

 For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Class Action Settlement, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) appointing Plaintiff Lanza as Class Representative for settlement purposes, (iv) appointing Rafey S. Balabanian and Ari J. Scharg of

---

[5]   In the event that the transmission of such email notice results in any "bounce-backs," the Settlement Administrator shall, if possible, correct any issues that may have caused the "bounce-back" to occur and make a second attempt to re-send the email notice.  (Agreement ¶ 4.2(b).)

Edelson LLC as Class Counsel for settlement purposes, (v) scheduling a Final Fairness Hearing in this matter, (vi) approving the form and content of the notice to the members of the Settlement Class, and (vii) providing such other and further relief as the Court deems reasonable and just.[6]

Respectfully submitted,

**DEBBIE LANZA**, individually and on behalf of all others similarly situated,

Dated:  October 29, 2013                    By:    Ari J. Scharg
                                                           One of Plaintiff's Attorneys

Rafey S. Balabanian
Ari J. Scharg (*Admitted Pro Hac Vice*)
Benjamin S. Thomassen
EDELSON LLC
350 North LaSalle Street, Suite 1300 Chicago, Illinois 60604
Tel: (312) 589-6380
rbalabanian@edelson.com
ascharg@edelson.com
bthomassen@edelson.com

Dated:  October 29, 2013                    By:    Stefan Coleman
                                                           One of Plaintiff's Attorneys

Stefan Coleman, Esq. (#30188)
LAW OFFICES OF STEFAN COLEMAN, PLLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
Fax: 888.498.8946
law@stefancoleman.com

---

[6]    A [Proposed] Preliminary Approval Order is attached hereto as Exhibit 3 and has also been submitted to the Court separately via email to middlebrooks@flsd.uscourts.gov.

## <u>CERTIFICATE OF SERVICE</u>

      I, Stefan Coleman, an attorney, certify that on October 29, 2013, I served the above and foregoing ***Plaintiff's Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this, the 29th day of October, 2013.

                            /s/ Stefan Coleman