**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 9:13-cv-80093-DMM

DEBBIE LANZA, individually and on behalf of
all others similarly situated,

       *Plaintiff*,

v.

UPSCALE EVENTS BY MOSAIC, LLC
d/b/a THE MOSAIC GROUP, a Florida limited
liability company, and PALM BEACH MALL
HOLDINGS LLC, a Delaware limited liability
company,

       *Defendants*.

**PLAINTIFF LANZA'S MOTION FOR REASONABLE
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

**Respectfully submitted by:**

Ari J. Scharg (Admitted *Pro Hac Vice*)
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6380
Fax: 312.589.6378

Stefan Coleman, Esq. (#30188)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN PLLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
Fax: 888.498.8946

*Attorneys for Plaintiff and the Class*

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

        A.      Plaintiff's Allegations and the Litigation History ...............................2

        B.      The Parties' Renewed Settlement Efforts and Negotiations ...........................5

        C.      The Parties' Post-Preliminary Approval Mediation of Attorneys' Fees ..........6

        D.      The Settlement Achieves Strong Relief for the Settlement Class ....................6

III.    THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS'
        FEES AND EXPENSES BECAUSE THEY ARE REASONABLE .............................7

        A.      Class Counsel Exerted a Great Deal of Time and Effort in This
                Case and Were Consequently Precluded from Accepting Other
                Employment...................................................................................................9

        B.      The Issues Involved Were Novel and Difficult and the Risk of
                Nonpayment and Not Prevailing on the Claim Was High ...............................11

        C.      Class Counsel Achieved an Excellent Result for the Class ............................12

        D.      The Requested Fee is Consistent With Those Awarded in
                Other Class Settlements in This District and TCPA Cases
                Throughout the Country ...............................................................................14

        E.      A High Level of Skill Was Required to Perform the Legal Services
                Properly ......................................................................................................14

        F.      A Lodestar Cross-Check Supports the Reasonableness of the
                Requested Fee Award ...................................................................................16

IV.     THE AGREED-UPON INCENTIVE AWARD TO PLAINTIFF SHOULD BE
        APPROVED ......................................................................................................19

V.      CONCLUSION ...................................................................................................20

<u>**TABLE OF AUTHORITIES**</u>

**<u>United States Supreme Court Cases</u>**

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)......................................................8 n.2

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................................7

*Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012)..................................................13

**<u>United States Court of Appeals Cases</u>**

*Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991)..............7, 8, 9

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011) ................................8

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)................. 8-9

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) .............................13

*Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530 (11th Cir. 1983) .................................10

**<u>United States District Court Cases</u>**

*Allapattah Serv., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) .................... *passim*

*Arthur v. Sallie Mae, Inc.*, No. 10-cv-198 (W.D. Wash.) ...............................................13

*Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) .............................17 n.5

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa 1985).........................................19

*Cellco P'ship v. Plaza Resorts Inc.*,
    No. 12-cv-81238, 2013 WL 5436553 (S.D. Fla. Sept. 27, 2013).....................................12

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) ....................................................7

*Di Giacomo v. Plains All Am. Pipeline*,
    Nos. 99-cv-4137, 99-cv-4212, 2001 WL 34633373 (S.D. Fla. Dec. 19, 2001)................18

*Ellison v. Steve Madden, Ltd.*, No. 11-cv-05935 (C.D. Cal.).........................................15

*Espinal v. Burger King Corp. et al.*, No. 09-20982 (S.D. Fla.) .....................................18

*Francisco v. Numismatic Guaranty Corp. of Am.*,
    No. 06-cv-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008).........................................11

*Gutierrez v. Barclays Group*, No. 10-cv-01012 (S.D. Cal.) ............................................................13

*Harris v. comScore*, No. 11-cv-5807, 2013 WL 1339262 (N.D. Ill. 2013)..................................15

*Holman v. Student Loan Xpress, Inc.*, 778 F. Supp. 2d 1306 (M.D. Fla. 2011) .....................16 n.4

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) .............................................................8, 11, 14, 16

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) .........18

*In re Facebook Privacy Litig.*, No. 10-cv-02389 (N.D. Cal.) .......................................................15

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-02261 (S.D. Cal.)............................13, 15

*In re Netflix Privacy Litig.*, No. 11-cv-00379 (N.D. Cal.) .........................................................15

*In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323 (S.D. Fla. 2001)....................................11, 14, 16

*In re Terazosin Hydrochloride Antitrust Litig.*,
    99-md-1317, 2005 WL 2451958 (S.D. Fla. July 8, 2005)..................................................17

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) .......................................................19

*Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142 (N.D. Cal.)................................................13

*Kertesz v. Rick's Cabaret International, Inc., et al.*, No. 11-cv-61289 (S.D. Fla.) .....................18

*Kramer v. Autobytel*, No. 10-cv-2722 (N.D. Cal.)..........................................................13, 15, 19

*Lozano v. Twentieth Century Fox Film Corp.*, No. 09-CV-6344 (N.D. Ill.) .................... 15-16, 19

*Mais v. Gulf Coast Collection Bureau, Inc.*,
    No. 11-cv-61936, 2013 WL 1899616 (S.D. Fla. May 8, 2013).......................................11

*Miller v. Red Bull*, No. 12-cv-04961 (N.D. Ill.)............................................................................15

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...................... *passim*

*Ressler v. Jacobsen*, 149 F.R.D. 651 (M.D. Fla. 1992) ................................................................16

*Satterfield v. Simon & Schuster*, No. 06-cv-2893 CW (N.D. Cal.) ........................................15, 19

*Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704 (D. Colo. 2007)............................................10

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ..................................8 n.2

*Weinstein, v. The Timberland Co.*, No. 06-cv-00484  (N.D. Ill.) ...................................................12

*Wolff v. Cash 4 Titles*, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012).......................................8, 14

**Rules and Statutes**

47 U.S.C. § 227 ...........................................................................................................................1

**Other**

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) ...........................8 n.2

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 2013 WL 1934349, 28 F.C.C.R. 6574 (May 9, 2013) ...................................................................12

In accordance with this Court's October 30, 2013 Order Granting Preliminary Approval of Class Action Settlement (dkt. 120), and pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiff respectfully requests the Court grant her Motion for Reasonable Attorneys' Fees, Expenses, and Incentive Award, and in support states as follows:[1]

## I.    INTRODUCTION

The Settlement of the class action lawsuit, under which Plaintiff's instant request for attorneys' fees and an incentive award is made, resolves claims against Defendants Palm Beach Mall Holdings LLC ("PBMH") and Upscale Events by Mosaic, LLC ("Mosaic" and collectively "Defendants") related to their text message promotion of the New Palm Beach Mall—a shopping mall being developed by PBMH.  Plaintiff Debbie Lanza alleges that in August 2012, Defendants "scraped" the State of Florida voter records database for cell phone numbers of voters who lived near the mall and then transmitted unsolicited text messages to her cell phone and the cell phones of approximately 90,000 other West Palm Beach residents in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

After forging through a year of hard-fought litigation and as this case was approaching trial—with class certification and summary judgment motions fully briefed—Class Counsel were able to reach an Agreement with Defendants providing exceptional benefits to the Class. The resultant class action settlement makes available $6,500,000 that will provide, *inter alia*, each person who received an unwanted text message related to the New Palm Beach Mall up to $150 and also includes prospective measures precluding Defendants' future transmission of such text

---

[1]     Pursuant to Rule 23(h)(1) and the Court's Order granting preliminary approval (dkt. 120), Class Counsel are filing this motion in advance of the January 13, 2014 deadline for objecting to the Settlement.  Upon filing, a copy of this motion will be posted to the settlement website, www.palmbeachtextsettlement.com, where it can easily be accessed by Class members.

messages.  While the terms of the Settlement provide an exemplary result for Class Members,

they do not contain an agreement amongst the Parties regarding the amount of attorneys' fees or

an incentive award for Plaintiff.  The Parties simply agreed to submit their differing views as to

what amounts were reasonable to the Court for its determination.

However, on December 18, 2013, the Parties decided to make a final attempt at reaching

resolution on the amount of attorneys' fees and an incentive award through mediation with Jack

C. Auspitz of Morrison & Foerster LLP in New York.  When the Parties were unable to agree at

the end of the day, Mr. Auspitz made a mediator's proposal of reasonable attorneys' fees of

$1,275,00 and an incentive award of $7,500.  The Parties accepted the proposal and Plaintiff now

moves for the Court's approval of these agreed-upon amounts.  As set forth below, Class

Counsel's fee request is less that the 25% "benchmark" for awards in this Circuit and the

incentive award is at or less than those approved in similar cases across the country.

Accordingly, Class Counsel's fee request, and the incentive award for Plaintiff, should be

approved.

## II.     BACKGROUND

### A.     Plaintiff's Allegations and the Litigation History.

On January 29, 2013, Plaintiff Lanza filed this class action alleging that Defendant

Mosaic, a marketing company, and then-Defendant EMJ Corporation ("EMJ"), a construction

company, violated the TCPA by sending unsolicited text messages promoting the New Palm

Beach Mall to thousands of cell phones without consent.  (Dkt. 1.)  The alleged text messages

contained a hyperlink to the mall's promotional website and an announcement concerning a job

fair for construction workers.  (Dkt. 1 ¶ 17.)  Mosaic and EMJ answered the complaint by

denying the substance of the allegations and setting forth numerous affirmative defenses.  (Dkts.

17, 24.)

On April 18, 2013, the Court issued a pretrial scheduling order (dkt. 15), and referred the case to Magistrate Judge Brannon for a settlement conference on July 23, 2013.  (Dkts. 16, 32.) Following their Rule 26(f) conference, the parties exchanged initial disclosures and Plaintiff propounded her First Set of Interrogatories and Requests for the Production of Documents on Mosaic and EMJ.  (*See* Declaration of Ari J. Scharg ("Scharg Decl.") ¶ 5.)

The resultant production identified three additional parties that were involved in the transmission of the text messages at issue.  (Scharg Decl. ¶ 5.)  Because Mosaic refused to confirm, through discovery or otherwise, the role of these third parties in the text message marketing campaign at issue, on May 13, 2013, Plaintiff moved the Court for leave to file an amended complaint adding PBMH, New England Development, Inc. ("New England"), and Eastern Real Estate, LLC ("Eastern Real Estate") as named party-defendants.  (Dkt. 23.)   After full briefing, the Court granted Plaintiff's motion over Mosaic's opposition (dkt. 34), and Plaintiff filed her Amended Class Action Complaint on June 10, 2013.  (Dkt. 35.)  Soon after, Plaintiff and the newly-added defendants exchanged further sets of written discovery and served deposition notices.  (Scharg Decl. ¶ 6.)

In the weeks leading up to their settlement conference before Magistrate Judge Brannon, the Parties produced and exchanged thousands of pages of documents through discovery and met and conferred at length in an attempt to narrow the facts and issues in dispute.  (Scharg Decl. ¶ 7.)  Based on the documents and information produced in discovery, Plaintiff determined that EMJ was not a necessary party to the lawsuit and voluntarily dismissed EMJ without prejudice on July 22, 2013.  (Dkt. 62.)

The following day, on July 23, 2013, the Parties—including Plaintiff Lanza and the

Defendants' respective corporate representatives—participated in an in-person settlement conference with Magistrate Judge Brannon. (Dkt. 65.) Over the course of the day, the Parties engaged in several rounds of productive discussions, but ultimately were unable to agree on the terms or structure of a settlement at that time. (Scharg Decl. ¶ 8.) Nonetheless, based upon additional information provided by the then-defendants at the settlement conference (in addition to that already produced during discovery), Plaintiff determined that New England and Eastern Real Estate were not necessary parties to the lawsuit, and in the interests of efficiency and judicial economy, voluntarily dismissed them without prejudice on September 6, 2013. (Dkt. 93.)

Following the settlement conference, Plaintiff continued to press discovery with the remaining Defendants—PBMH and Mosaic—which included the production of several thousand more documents, the deposition of Plaintiff Lanza, and the Rule 30(b)(6) depositions of Defendants' corporate representatives. (Scharg Decl. ¶ 9.) The Parties also agreed to continue exploring the possibility of settlement in the weeks after the settlement conference. (*Id*. ¶ 10.) However, after reaching an impasse, the Parties decided to table further settlement discussions until after discovery was closed and class certification and dispositive motions were filed. (*Id*.)

On August 26, 2013—two weeks after discovery closed—Defendant PBMH filed its motion for summary judgment (dkt. 79), and Plaintiff filed her motion for class certification (dkt. 83) and a cross-motion for partial summary judgment. (Dkt. 85.) These motions were fully briefed. (*See* Dkts. 85, 88, 94, 96, 97, 98, 99, 103 & 104.) A few weeks later, in preparation for trial, the Parties filed their Joint Pretrial Stipulation (dkt. 109) and disclosed their respective witness and exhibit lists. (Dkt. 109, Exhibits 1-5.)

4

**B.      The Parties' Renewed Settlement Efforts and Negotiations.**

In addition to preparing for trial, immediately after filing their opening dispositive motions on August 26, 2013, the Parties also doubled their settlement efforts in an attempt to reach resolution. (Scharg Decl. ¶ 12.) Over the course of the next four weeks, they engaged in extensive discussions and this time they made substantial progress towards settlement and agreed to work through the remaining issues that stood in the way of a complete resolution. (*Id.*)

Finally, on October 3, 2013, after several additional rounds of arm's-length negotiations, the Parties were finally able to bridge the gap and reach an agreement on the principal terms of a settlement, which they memorialized in a Memorandum of Understanding. (*Id.* ¶ 13.) The Parties then began negotiating the final terms of the settlement, and over the next three weeks, exchanged numerous drafts of the settlement agreement and related documents, until all were finalized. (*Id.* ¶ 14.) However, the Parties did not agree on, much less discuss, any amount of attorneys' fees payable to Class Counsel or an incentive award to Plaintiff. (*Id.*) Rather, Class Counsel—determined to not delay the relief to the Class with negotiations over attorneys' fees and the amount of the incentive award—agreed to petition the Court for attorneys' fees, which Defendants were free to oppose. (*Id.* ¶ 15.) However, without any consideration from Defendants, Class Counsel committed to not seek more than $2,145,000 in attorneys' fees and costs (or 33% of the common benefit made available to the Settlement Class), and not more than $15,000 as an Incentive Award to Ms. Lanza. (*Id.*)

Ultimately, the Parties executed the Settlement on October 28, 2013 and Plaintiff moved for preliminary approval. (Dkt. 115.) On October 31, 2013, the Court entered an Order granting preliminary approval and directing notice to the Class to be effectuated. (Dkt. 120.)

**C.      The Parties' Post-Preliminary Approval Mediation of Attorneys' Fees.**

In the weeks following the Court's entry of preliminary approval, the Parties attempted to negotiate the amount of the attorneys' fees and an incentive award between themselves, but reached an early impasse. (Scharg Decl. ¶ 16.)  To avoid burdening the Court with further litigation about what a reasonable amount of attorneys' fees or incentive award would be, on December 18, 2013, the Parties participated in a formal mediation on these issues in New York City with third-party neutral Jack Auspitz of Morrison & Foerster LLP.  (Scharg Decl. ¶ 17.) But after a full day of mediation and several rounds of arm's-length negotiations (all of which were supervised by Mr. Auspitz), the Parties were still unable to reach an agreement.  (*Id.*)  In the end, Mr. Auspitz made a mediator's proposal of $1,275,000 in attorneys' fees and $7,500 as an incentive award to Ms. Lanza, which he believed to be reasonable.  (*Id.* ¶ 18.)  Both Parties accepted.  (*Id.*)

**D.      The Settlement Achieves Strong Relief for the Settlement Class.**

Under the terms of the Settlement, Defendants have agreed to pay up to $6,500,000, which shall be used to pay all valid claims made by Settlement Class Members of up to $150, special master fees, notice and administrative expenses, and any attorneys' fees to Class Counsel and incentive award to Ms. Lanza as Class Representative that are ultimately approved by the Court.  (*See* Class Action Settlement Agreement, Dkt. 115-1 at ¶¶ 1.14, 2.1(a).)  Class Members are able to submit claims by U.S. Mail or online at the Settlement Website, http://www.palmbeachtextsettlement.com, by submitting a simple claim form.  (Dkt. 115-1 at ¶¶ 1.2, 4.2(b) & (d).)

Further, the Settlement provides the prospective measures necessary to ensure that Defendants do not send unauthorized text messages to the Settlement Class or the public in the

future.  To that end, the Settlement prohibits Defendants from sending directly or indirectly (i.e., through contractual agreements with others) any text messages otherwise prohibited by the TCPA unless the recipient has provided prior express consent to receive them.  Defendants have also agreed to maintain documentation of such prior express consent for a period of four years. (Dkt. 115-1 at ¶ 2.2.)

Finally, to apprise the Class of the Settlement, the Parties agreed to a multi-part Notice Plan that includes direct notice via First Class U.S. Mail and/or e-mail to every address contained in the Class List, a dedicated settlement website, and notice to the relevant government agencies under the Class Action Fairness Act, 28 U.S.C. § 1715.  (Dkt. 115-1 at ¶ 4.)  As a supplemental means of notice, the Settlement Administrator published the notice of the Settlement in publications geographically targeted to reach the Settlement Class Members (i.e., 90,000 West Palm Beach residents), including the South Florida Sun-Sentinel, Boca Raton Tribune, Palm Beach Daily News, Palm Beach Post, El Latino Semanal, and Semanario Accion.  (*Id.* ¶ 4.2(c).)

## III.    THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS' FEES AND EXPENSES BECAUSE THEY ARE REASONABLE

Under Federal Rule of Civil Procedure 23(h), courts may award reasonable attorneys' fees to class counsel who prosecute the case.  *See Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).  Courts strongly encourage negotiated fee awards in class action settlements.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee."); *accord Cohn v. Nelson*, 375 F. Supp. 2d 844, 854 (E.D. Mo. 2005) ("where, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.").  In this case, where the Settlement Agreement resulted in the creation of a $6,500,000 monetary benefit to the class, attorneys' fees are

calculated based on a "reasonable percentage of the fund established for the benefit of the class."[2] *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011) (citing *Camden I*, 946 F.2d at 774); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011) (holding that the Eleventh Circuit "mandates the *exclusive* use of the percentage approach in common fund cases") (emphasis in original).  The "benchmark" percentage fee award—which may be adjusted in accordance with the circumstances of each individual case—is 25% of the common benefit created for the class.  *Camden I*, 946 F.2d at 775.  The benchmark, however, is just that, and fee awards often exceed this guidepost.  *See, e.g., Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (finding that 33% is the market rate in class actions); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007) ("The 30% fee requested in this case is well in line with the bulk of the fee awards in class action litigation").

　　　　Ultimately, the percentage awarded as attorneys' fees must be "reasonable," which is

---

[2]　　　A "common fund" is established when a class action settlement agreement provides that "each class member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980).  That is exactly the case here—without even considering the value of the prospective relief, each Class Member has an "undisputed and mathematically ascertainable" claim to a cash payment of up to $150 from the $6.5 million sum and all fees and expenses likewise derive from that sum.  *See, e.g., Camden I*, 946 F.2d at 770.  Thus, the $6.5 million monetary component constitutes a "common fund" for purposes of evaluating the reasonableness of Class Counsel's fee request.  Further, the calculation of attorneys' fees is based on a percentage of the *entire* $6.5 million benefit available—not the amount claimed against it.  *See Boeing Co.*, 444 U.S. at 478 ("A litigant or lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole."); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999)  ("class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed"); Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:18 (4th ed. 2004) ("It is now settled that class counsel may seek a fee award based on the total potential benefit to the class, rather than being limited by the total amount of claims actually exercised by class members.").

evaluated through consideration of the twelve factors articulated in *Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974), with particular emphasis on the "monetary results achieved" in the case.  *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1202 (S.D. Fla. 2006).  The twelve "*Johnson* factors" are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Id*. (citing *Camden I*, 946 F.2d at 772).

Here, Class Counsel requests the Court approve the $1,275,000 in attorneys' fees resulting from the Parties' acceptance of the mediator's proposal—which represents 19.6% of the $6,500,000 made available to the Class—and, as discussed below, is eminently reasonable in light of the *Johnson* factors.

### A.   Class Counsel Exerted a Great Deal of Time and Effort in This Case and Were Consequently Precluded from Accepting Other Employment.

The first, fourth, and seventh *Johnson* factors—the time and labor, preclusion of other employment, and time limitations imposed, respectively—are interrelated inquires and each support the reasonableness of Class Counsel's fee request.  Class Counsel engaged in a year of contentious and hard-fought litigation before reaching a Settlement after the close of discovery and on the eve of trial.  The tasks Class Counsel was required to perform in order to achieve the beneficial results of the Settlement included:

- extensive pre-suit investigation of Plaintiff's claims and the claims of the Class;

- the completion of substantial class- and merits-focused discovery, including the

production and review of thousands of documents, the depositions of Plaintiff Lanza, and several Rule 30(b)(6) depositions of Defendants' designees;

- the filing of a motion to compel discovery;

- an in-person settlement conference with Magistrate Judge Brannon;

- the complete briefing of Plaintiff's motion for class certification and the Parties' cross-motions for summary judgment;

- the preparation for trial including filing witness and exhibit lists; and

- extensive arm's-length settlement negotiations that culminated in a comprehensive settlement agreement.

These efforts required Class Counsel to spend over 2,000 hours representing Plaintiff and the Class without compensation. In addition to the over 2,000 hours already expended, Class Counsel must still prepare briefing for the final fairness hearing, communicate with Class Members about the Settlement, and otherwise supervise the administration of the Settlement. (Scharg Decl. ¶ 25.)

Further, it is notable that most of the over 2,000 hours that Class Counsel devoted to this case occurred in a nine-month time period between the filing of the lawsuit on January 29, 2013 and the close of discovery on August 26, 2013. In those nine months, Class Counsel had to forgo accepting other cases and was precluded from devoting time and resources to litigating other matters. (Scharg Decl. ¶ 20); *see also Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) ("The expenditure of 1,000 billable hours—and often in significant blocks of time—necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award."); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium"). Accordingly, the amount of time and labor devoted to this case supports the reasonableness of Class Counsel's fee

request—especially when viewed in light of the short time period in which the case was filed, litigated, and settled.

    **B.**    **The Issues Involved Were Novel and Difficult and the Risk of Nonpayment and Not Prevailing on the Claim Was High.**

The second, sixth, and tenth *Johnson* factors—the novelty and difficulty of the questions, whether the fee is contingent, and the "undesirability" of the case, respectively—are also interrelated and support the requested fee award. "A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto*, 513 F. Supp. 2d at 1339. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 (citing *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001)). Ultimately, "attorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *14 (S.D. Fla. Jan. 31, 2008) (citing *Pinto,* 513 F. Supp. 2d at 1339).

Here, this case has been fraught with risk from the outset. First, Class Counsel's representation of Plaintiff and the Class has been on a purely contingent basis, which necessarily assumed the significant risk that they would not be compensated for their time and out-of-pocket expenses put into the case. (Scharg Decl. ¶ 20.) This was especially true given that Defendant Mosaic who sent the text messages turned out to be insolvent and the chances of succeeding against Defendant PBMH who was the beneficiary of those text messages were thrown into question by *Mais v. Gulf Coast Collection Bureau, Inc*., 2013 WL 1899616 (S.D. Fla. May 8, 2013). (Scharg Decl. ¶ 21.) In *Mais,* the court found that the TCPA does not impose vicarious liability for the making of unauthorized calls to cell phones. *Id.* While *Mais* is at odds with the

controlling finding of the FCC and the decisions of other courts in this district, Plaintiff would nevertheless have to contend with that ruling, and ultimately prove PBMH's vicarious liability, which presents its own novel and difficult set of challenges.  *See In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 2013 WL 1934349, 28 F.C.C.R. 6574 (May 9, 2013); *Cellco P'ship v. Plaza Resorts Inc*., No. 12-cv-81238, 2013 WL 5436553, at *6 (S.D. Fla. Sept. 27, 2013).

Thus, Class Counsel took a significant risk in accepting the case on a contingency fee basis and expending over 2,000 attorney hours with no guarantee that they would obtain any benefit for the Class or themselves in the long run.  (Scharg Decl. ¶ 20.)  As such, the contingent nature of the fee arrangement, the novelty and difficulty of the vicarious liability issue, and the fact that Mosaic was (and is) insolvent all weigh in favor of a finding that Class Counsel's requested fee award is reasonable.

### C.   Class Counsel Achieved an Excellent Result for the Class.

The eighth and most significant *Johnson* factor looks to the amount involved and the results obtained by Class Counsel which, given the significant monetary and prospective benefits achieved here, weighs heavily towards the reasonableness of the amount of fees requested.  By submitting a short and simple claim form, each Class Member that received the allegedly unauthorized text message is entitled to a payment of up to $150 from the $6,500,000 made available for the benefit of the Class.  (Dkt. 115-1 at ¶ 2.1.)  This $150 settlement payment is an excellent result given that it likely exceeds any actual damages sustained, and the maximum amount of statutory damages available under the TCPA is $500.  Moreover, the Settlement is in line with—and in some cases exceeds—the benefits conferred by other TCPA settlements that

have received final approval from federal district courts throughout the country. *See, e.g.,*

*Weinstein, v. The Timberland Co.*, No. 06-cv-00484 (Dkt. 93) (N.D. Ill. Dec. 18, 2008)

(providing for a payment of $150 to each class member); *Kramer v. Autobytel Inc.*, No. 10-cv-

02722-CW (Dkt. 148) (N.D. Cal. Feb. 10, 2012) (providing for a payment of $100 to each class

member); *Gutierrez, et al. v. Barclays Group, et al.*, No. 10-cv-1012 (Dkt. 58) (S.D. Cal. Mar.

12, 2012) (providing for a payment of $100 to each class member); *Kazemi v. Payless*

*Shoesource, Inc.*, No. 09-cv-5142 (Dkt. 94) (N.D. Cal. Apr. 2, 2012) (providing for a $25

merchandise voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-

md-02261 (Dkt. 97) (S.D. Cal. Feb. 15, 2013) (providing for a $20 voucher or $15 cash payment

to each class member); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-198 (Dkt. 266) (W.D. Wash. Sept.

17, 2012) (providing for a $20-$40 payment to each class member).

        In addition to this substantial monetary relief, Defendants have agreed to implement

significant changes to their practices designed to ensure that unauthorized text messages are not

sent in the future and that if they do send any further text messages they must maintain proof of

prior express consent for a period of four years.  (Dkt. 115-1 at ¶ 2.2.)  These changes not only

help achieve the injunctive goals of Plaintiff's TCPA class action claim, but also promote

important public policy concerns related to privacy and nuisance stemming from the same type

of cost-shifting promotions that prompted Congress to enact the TCPA in the first place. *See*

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Mims v. Arrow Fin.*

*Servs., LLC*, 132 S. Ct. 740, 745 (2012).

        Thus, that the "settlement is substantial and results in immediate relief for the class"

weighs in favor of finding that the requested fee is reasonable. *In re Checking Account*

*Overdraft Litig.*, 830 F. Supp. 2d at 1362.

13

**D.    The Requested Fee is Consistent With Those Awarded in Other Class Settlements in This District and TCPA Cases Throughout the Country.**

The fifth and twelfth *Johnson* factors, the customary fee and awards in similar cases, respectively, also support a finding that the agreed-upon fee request—which amounts to 19.6% of the $6.5 million fund—is reasonable.  Indeed, a fee request of 19.6% falls below not only the 25% benchmark, but also the customary award in this Circuit.  *See, e.g., In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1365 (S.D. Fla. 2011) (finding that a 30% fee is customary in class action cases);  *Wolff*, 2012 WL 5290155, at *6 (finding that 33% is the market rate in class actions); *Pinto*, 513 F. Supp. 2d at 1341 ("The 30% fee requested in this case is well in line with the bulk of the fee awards in class action litigation"); *Allapattah*, 454 F. Supp. 2d at 1204 (S.D. Fla. 2006) (awarding 31.3% of fund).

Similarly, the requested fee award is on the low side of those typically awarded in TCPA class actions, which generally range from 25%-33% of the total monetary benefit available, as indicated by the chart attached hereto as Exhibit 1.  Further, unlike the instant case, many of the cases listed in Exhibit 1 were settled before the completion of discovery, class certification briefing, and summary judgment filings.  Accordingly, this factor further favors Class Counsel's request for 19.6% of the common fund.

**E.    A High Level of Skill Was Required to Perform the Legal Services Properly.**

The remaining *Johnson* factors—the skill required to perform the legal service properly and the experience, reputation, and ability of the attorneys—confirm that the requested fee is reasonable.  As discussed above, Class Counsel were able to successfully resolve this case through a settlement that confers substantial monetary and prospective relief to the Class despite litigating against a well-financed Defendant (with respect to PBMH) employing top-tier counsel from a national law firm.  (Scharg Decl. ¶ 22); *see also In re Sunbeam Sec. Litig.,* 176 F. Supp.

2d at 1334  ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced").

This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Indeed, Class Counsel regularly engages in major complex litigation involving mobile technologies and has frequently been appointed lead class counsel by courts throughout the country.  (*See* Firm Resume of Edelson PC, attached to the Scharg Declaration as Exhibit 1-A); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379 (Dkt. 59) (N.D. Cal. 2011) (appointed Interim Class Counsel in an adversarial leadership dispute, during which the court noted that the Edelson firm "specializes in class actions relating to consumer technology and privacy issues" and that the "firm's significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class"); *In re Facebook Privacy Litig.,* No. 10-cv-02389 (Dkt. 69) (N.D. Cal. 2010) (noting that the attorneys at Edelson are "pioneers in the electronic privacy class action field"); *Harris v. comScore*, No. 11-cv-5807, 2013 WL 1339262, at *1 (N.D. Ill. Apr. 2, 2013) (achieving adversarial certification in the largest-ever privacy class action); *In re Jiffy Lube*, No. 11-md-02261 (obtaining final approval of $35 million settlement for text message TCPA claims).

Most importantly with respect to the claims asserted in this case, Class Counsel "have pioneered the application of the TCPA to text-messaging technology" and have litigated "some of the largest consumer class actions in the country on this issue."  *Ellison v. Steve Madden, Inc.*, No. 11-cv-05935 (Dkt. 73, at 9) (C.D. Cal. May 7, 2013); *see also Kramer*, No. 10-cv-02722 (Dkt. 148) (N.D. Cal. Jan. 27, 2012) (appointed class counsel in nationwide class action settlement of TCPA claims); *Miller v. Red Bull*, No. 12-cv-04961 (Dkt. 59) (N.D. Ill. Aug. 12,

2013) (same); *Satterfield v. Simon & Schuster*, No. 06-cv-2893 (Dkt. 132) (N.D. Cal. Aug. 6, 2010) (same); *Lozano v. Twentieth Century Fox Films Corp.*, No. 09-cv-6344 (Dkt. 65) (N.D. Ill. Apr. 15, 2011) (same).  As they did in each of the above-referenced cases, Class Counsel used their extensive experience to effectively investigate, prosecute, and settle the claims at issue here, and the results achieved are in line with or exceed those obtained in similar cases.[3]

### F.   A Lodestar Cross-Check Supports the Reasonableness of the Requested Fee Award.

While the Eleventh Circuit "mandate[s] the exclusive use of a percentage approach in common fund cases" such as this, *In re Checking Accounts Overdraft Litig.*, 830 F. Supp. 2d at 1363, some courts in this Circuit still use the lodestar method to cross-check the reasonableness of the requested percentage of the common fund.  *See Pinto*, 513 F. Supp. 2d at 1343; *In re Sunbeam*, 176 F. Supp. 2d at 1336 (citing *Ressler v. Jacobson*, 149 F.R.D. 651, 653 n.4 (M.D. Fla. 1992)).[4]  However—and as this Court has recognized—"this cross-check is not to be used as a backdoor avenue of using the lodestar method instead of the percentage of the fund method." *In re Sunbeam*, 176 F. Supp. 2d at 1336.

Class Counsel's lodestar is reflected in the following chart:

---

[3]   Finally, the eleventh *Johnson* factor—the nature and length of the professional relationship with the client—also weighs in favor of the requested fees as Class Counsel had no prior relationship with Plaintiff Debbie Lanza before this case.  *See Allapattah*, 454 F. Supp. 2d at 1216.

[4]   Utilizing the "lodestar method" as a cross-check requires a calculation of attorneys' fees by multiplying the number of hours class counsel reasonably expended on the litigation by a reasonable hourly rate that takes into consideration the region and the experience of class counsel.  *See Holman v. Student Loan Xpress, Inc.*, 778 F. Supp. 2d 1306, 1315 (M.D. Fla. 2011).

| ATTORNEY (Position) | YEARS OF EXPERIENCE | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Jay Edelson (Managing Partner) | 18 | 39.40 | $685 | $26,989.00 |
| Rafey Balabanian (Partner and GC) | 9 | 154.10 | $570 | $87,837.00 |
| Ari Scharg*[5] (Associate) | 6 | 487.50 | $450 | $219,375.00 |
| Christopher Dore (Associate)* | 5 | 165.20 | $450 | $74,340.00 |
| Roger Perlstadt (Associate) | 11 | 94.90 | $515 | $48,873.50 |
| Benjamin Thomassen (Associate) | 3 | 400.90 | $350 | $140,315.00 |
| Nick Larry (Associate) | 2 | 92.10 | $335 | $30,853.50 |
| David Mindell (Associate) | 2 | 42.90 | $335 | $14,371.50 |
| Courtney Booth (Associate) | 1 | 211.60 | $295 | $62,422.00 |
| Stefan Coleman (Local Counsel) | 7 | 209.6 | $450 | $94,320 |
| Law Clerks | n/a | 107.20 | $215 | $23,048.00 |
| Estimated Time Remaining | n/a | ≈ 125 | ≈ $400 | $50,000.00 |
| **TOTAL** | | **2,130.4** | | **$872,744.50** |

Class Counsel's base lodestar of $872,744.50[6] represents the total work that a team of

attorneys from two law firms, Edelson PC and the Law Offices of Stefan Coleman PLLC, have

---

[5]     Ari Scharg and Christopher Dore, the individuals denoted by the asterisks, were recently elevated to the position of Partner at Edelson PC, and their corresponding rates are equal to their current rates. This use of billing current rates is proper as it compensates counsel for inflation and delay in receipt of payment. *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547 (S.D. Fla. 1988) *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990).

[6]     Plaintiff's counsel also incurred $12,383.79 in hard costs prosecuting this lawsuit. (Scharg Decl. ¶ 23.)

performed for this case.[7]   The attorney rates listed are the same as those charged to Plaintiff's

counsels' hourly clients, *In re Terazosin Hydrochloride Antitrust Litig.*, 99-md-1317, 2005 WL

2451958, at *2 (S.D. Fla. July 8, 2005), are comparable to those charged by attorneys in both

Illinois and Florida, and have been approved by judges in this Circuit, as well as other federal

courts throughout the country, both in TCPA cases and other class action litigation.  (Declaration

of David P. Milian ¶ 9; Declaration of Stefan Coleman ¶ 7; Scharg Decl. ¶ 24); *see, e.g., Espinal

v. Burger King Corp. et al*., No. 09-cv-20982 (S.D. Fla. 2010) (finding that Class Counsel's

"rates are comparable to or less than those typically paid to both defense counsel and plaintiffs'

firms in similar types of sophisticated cases. . . "); *Kertesz v. Rick's Cabaret International, Inc.,

et al.*, No. 11-cv-61289 (S.D. Fla. 2012) ("The Court finds the rates charged to be appropriate

and reasonable in light of the experience of each attorney and that the hourly rates are in line

with comparable market rates.").

The base lodestar, however, is not the end of the inquiry as it may be adjusted for the risk

of loss and the possibility that the attorneys will not receive payment if the suit does not succeed.

*Pinto,* 513 F. Supp. 2d at 1343-44.  The average lodestar risk multiplier in the Eleventh Circuit is

3, but typically ranges from 2.26 to 4.5. *Id.* at 1344; *see also Di Giacomo v. Plains All Am.

Pipeline*, Nos. 99-cv-4137, 99-cv-4212, 2001 WL 34633373, at *10 (S.D. Fla. Dec. 19, 2001)

(awarding multiplier of 5.3).

Here, the requested award would represent a multiplier of just 1.45.  A 1.45 multiplier is

quite modest and is in line with the average multiplier obtained by Class Counsel in similar

TCPA settlements.  (Scharg Decl. ¶ 26.)  Accordingly, the requested attorneys' fee of $1,275,000

---

[7]      Plaintiff's counsel adjusted its lodestar downwards by 79.9 hours to account for
unnecessary or duplicative work.  (Scharg Decl. ¶ 23.)

is reasonable under either analysis and should be approved.

## IV.   THE AGREED-UPON INCENTIVE AWARD TO PLAINTIFF SHOULD BE APPROVED

Finally, the Court must consider whether to approve the requested Incentive Award to Plaintiff as class representative.  Courts consistently find it appropriate to provide a named class representative with an incentive award for the benefits they have conferred upon the rest of the class. *See Allapattah*, 454 F. Supp. 2d at 1218-19; *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (awarding two incentive awards of $55,000 and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) (awarding incentive awards of $20,000 to each of two plaintiffs).  These awards are intended to "compensate named Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *Allapattah,* 454 F. Supp. 2d at 1218-19 (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)).

In this case, the $7,500 proposed Incentive Award to Ms. Lanza, which was agreed-upon as part of the mediator's proposal, is entirely reasonable as her involvement in this litigation was critical to the ultimate success of this case.  Further, the requested incentive award is at or below awards approved in similar class action settlements.  *Satterfield*, No. 06-cv-2893 (N.D. Cal. 2010) (awarding incentive awards of $20,000, $5,000, and $5,000 to three plaintiffs); *Lozano*, No. 09-cv-6344 (N.D. Ill. 2011) (awarding incentive award of $15,000); *Kramer*, No. 10-cv-2722 (N.D. Cal. 2012) (awarding incentive award of $10,000).

Throughout this litigation there was no pre-agreement or discussion concerning an award or the potential for an award in exchange for Ms. Lanza's involvement.  (Scharg Decl. ¶ 27.) Nonetheless, Ms. Lanza contributed her own time and effort in pursuing the claims on behalf of the Class, exhibiting a willingness to participate and undertake the responsibilities and risks

attendant with bringing a representative action. (*See* Scharg Decl. ¶ 28.)  As the class

representative, Ms. Lanza consulted with Class Counsel on several occasions in person and over

the phone, reviewed documents produced by Defendants during discovery, assisted Class

Counsel with discovery, and personally appeared for both the settlement conference with

Magistrate Judge Brannon and her own deposition.  (*Id.* ¶ 28.)  Furthermore, she agreed to the

Settlement without demanding any incentive award for her efforts.  (*Id.* ¶ 27.)  Therefore, Class

Counsel requests that the Court approve the requested incentive award of $7,500 for Ms. Lanza,

as she is certainly deserving of an award in that amount.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court find that the

requested attorneys' fees, expenses and incentive award are reasonable, enter the Proposed Order

separately submitted herewith granting the requested attorneys' fees and incentive award, and

award such further relief the Court deems reasonable and just.

Respectfully submitted,

**DEBBIE LANZA**, individually and on
behalf of all others similarly situated,

Dated: January 7, 2014                          By:____/s/  Stefan Coleman_____
                                                        One of Plaintiff's Attorneys

Ari J. Scharg (Admitted *Pro Hac Vice*)
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6380
Fax: 312.589.6378

Stefan Coleman, Esq. (#30188)
law@stefancoleman.com
Law Offices of Stefan Coleman, LLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
Fax: 888.498.8946

## CERTIFICATE OF SERVICE

I, Stefan Coleman, an attorney, certify that on January 7, 2014, I served the above and foregoing ***Plaintiff's Motion for Reasonable Attorneys' Fees, Expenses, and Incentive Award***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this, the 7th day of January, 2014.


/s/ Stefan Coleman

21